### MERRITT v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1920. Rehearing Denied July 6, 1920.)

No. 3414.

1. War ⟛4—Sugar a "necessary," within Food Control Act, as to hoarding.

Under Act Aug. 10, 1917, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛gg), prohibiting the hoarding of necessaries, sugar is a "necessary," in view of section 1 (section 3115⅛e), authorizing the President to make such regulations and issue such orders as are essential effectively to carry out the provisions of that act, under which the President provided for licensing manufacturers and distributors of certain food commodities, including sugar, and declared economy in the use of sugar necessary, and proof that sugar was a necessary was not required.

· [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

2. Criminal law ⟛304(9)—Judicial notice of war resolution and presidential proclamations taken.

The resolution of April, 1917, declaring a state of war, and the proclamations of the President under Act Aug. 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛*l*–3115⅛r), are public acts of which the courts take judicial notice.

---

⟛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Criminal law ⟨key⟩13—Statute prohibiting hoarding of necessaries not void for uncertainty; "hoarded."**

Act Aug. 10, 1917, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛gg), prohibiting the hoarding of necessaries and providing that necessaries shall be deemed hoarded when held, contracted for, or arranged for by any person in a quantity in excess of his reasonable requirements for use or consumption by himself and dependents for a reasonable time, is not void for indefiniteness and uncertainty as to the meaning of the word "hoarded."

4. **War ⟨key⟩4—Reasonable requirements of defendant and dependents for sugar sufficiently proved.**

In a prosecution for hoarding sugar, where there was evidence of the number of dependents in defendant's household and of the customary manner of managing his household affairs, and testimony as to the amount of sugar purchased during the period included in the indictment, in addition to that which he was charged with hoarding, and evidence that the sugar hoarded was not touched during that time, there was sufficient evidence as to his reasonable requirements for sugar for the use of himself and his dependents.

5. **Criminal law ⟨key⟩304 (17)—Judicial notice taken of orders of Food Administration.**

Judicial notice is taken of the orders of the Food Administration restricting the use of sugar during the war.

6. **War ⟨key⟩4—Conviction of hoarding sustained by evidence as to purchases authorized by defendant.**

Evidence that defendant authorized and knew of the purchases and delivery of excessive quantities of sugar at his several places would support a conviction for hoarding.

7. **Criminal law ⟨key⟩62—Procuring another to do criminal act constitutes guilt.**

Criminal guilt can be fixed where one procures another to do a criminal act.

8. **Criminal law ⟨key⟩330—Burden on defendant as to exceptions in criminal statute.**

In a prosecution for hoarding sugar, it devolved upon defendant to introduce evidence bringing himself within the exceptions of the statute negatived in the indictment.

9. **Criminal law ⟨key⟩1035 (5)—Overruling of challenge to juror challenged peremptorily not prejudicial, where defendant did not object to any other juror.**

The overruling of a challenge to a juror for cause was not prejudicial error, where defendant challenged the juror peremptorily, and, though defendant exhausted his peremptory challenges, he did not object to the new juror, or any other juror.

10. **Criminal law ⟨key⟩703—Opening argument in prosecution for hoarding sugar not improper.**

In a prosecution for hoarding sugar, the remarks of the counsel for the government in his opening statement that the jury should consider that at the time of the occurrence alleged the United States was at war with the greatest power that ever had been arrayed against civilization in the history of the world, and that defendant, about the time the war came on, said the people ought to accumulate an abundance of food, did not prevent a fair trial.

11. **War ⟨key⟩4—Evidence relevant on question of intent in prosecution for hoarding sugar.**

On a trial for hoarding sugar, evidence that a witness heard defendant say there would be a shortage of food, and that people should try to save something in case there was a shortage, was relevant on the question of intent.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

12. War ⬅️4—On trial for hoarding sugar, evidence of telephone conversation with defendant's home admissible to show intent.

On a trial for hoarding sugar, evidence concerning a telephone order for sugar from some one at defendant's home, whom the witness recognized by the voice as one from whom he had previously taken orders for sugar, was admissible as bearing on defendant's knowledge that those who bought produce for him were inquiring into the price of quantities of sugar.

13. Criminal law ⬅️470—Opinion of expert as to requirements of family for sugar immaterial.

On a trial for hoarding sugar, the opinion of a salesman in a grocery store as to what would be the reasonable requirements of a family was properly excluded; it being for the jury to say whether there was a hoarding of sugar in excess of defendant's reasonable requirements.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar. A. Trippet, Judge.

Hulett C. Merritt was convicted of an offense, and he brings error. Affirmed.

C. W. Pendleton, Meserve & Meserve, and Anderson & Anderson, all of Los Angeles, Cal., for plaintiff in error.

Robert O'Connor, U. S. Atty., and Lyndol L. Young, Sp. Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Merritt, plaintiff in error, was convicted of violation of the act of Congress of August 10, 1917, entitled an act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel. 40 Stat. 276 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r).

The charge was that Merritt, about October 15, 1917, did knowingly, willfully, and feloniously—

"Hoard a certain necessary, as defined in the act, * * * to wit, sugar; that is to say, that on or about the 15th of October, 1917, Merritt did knowingly, willfully, unlawfully, and feloniously hold, arrange for, and contract for five 100-pound sacks of sugar, the said 500 pounds of sugar then and there being a quantity of sugar in excess of the reasonable requirements of the said Hulett C. Merritt for use and consumption by himself and dependents for a reasonable time."

It is alleged that the hoarding and holding of the sugar was continuous from about the 15th of October, 1917, to the 25th of July, 1918, and that the holding, arranging for, and contracting for and hoarding did not relate to any transaction on any exchange, board of trade, or similar institution or place of business, as described in section 13 of the act of Congress already referred to; that Merritt did not hoard, hold, arrange, and contract for the said 500 pounds of sugar as a farmer or gardner, or as a member or on behalf of any co-operative association of farmers or gardeners, and that the sugar was

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not the product of any farm, garden, or other land owned, leased, or cultivated by Merritt.

Reversal is urged upon the ground that the portion of the act of Congress under which the indictment was drawn and upon which the prosecution was based is void for want of definiteness and certainty. Section 6 of the act (section 3115⅛gg) provides as follows:

"Any person who willfully hoards any necessaries shall upon conviction thereof be fined not exceeding $5,000 or be imprisoned for not more than two years, or both. Necessaries shall be deemed to be hoarded within the meaning of this act when either (a) held, contracted for, or arranged for by any person in a quantity in excess of his reasonable requirements for use or consumption by himself and dependents for a reasonable time; (b) held, contracted for, or arranged for by any manufacturer, wholesaler, retailer, or other dealer in a quantity in excess of the reasonable requirements of his business for use or sale by him for a reasonable time, or reasonably required to furnish necessaries produced in surplus quantities seasonally throughout the period of scant or no production; or (c) withheld, whether by possession or under any contract or arrangement, from the market by any person for the purpose of unreasonably increasing or diminishing the price: Provided, that this section shall not include or relate to transactions on any exchange, board of trade, or similar institution or place of business as described in section 13 of this act that may be permitted by the President under the authority conferred upon him by said section thirteen: Provided, however, that any accumulating or withholding by any farmer or gardener, co-operative association of farmers or gardeners, including livestock farmers, or any other person, of the products of any farm, garden, or other land owned, leased, or cultivated by him shall not be deemed to be hoarding within the meaning of this act."

It is argued that section 13 (section 3115⅛k) makes no attempt to define the term "necessaries" and that, although the statute attempts to define the word "hoarded," within the meaning of the act, such attempt is futile, in that the definition is too uncertain and indefinite to justify a court in sustaining the statute as a valid one in the creation of a crime.

[1, 2] We find ourselves unable to agree to the suggestion that sugar is not defined as a necessary. Section 1 of the act (section 3115⅛e) referred to expressly authorizes the President to make such regulations and to issue such orders as are essential effectively to carry out the provisions of the act. By proclamation issued October 8, 1917, the President provided for the licensing of manufacturers and distributors of certain food commodities, "including sugar," and afterwards by proclamation issued January 18, 1918, declared that a continued economy in the use of sugar was necessary until a later time. Of these proclamations, as of the resolution of Congress of April, 1917, declaring a state of war, judicial notice was proper. They were public acts, and we think it was unnecessary for the prosecution to introduce additional proof that sugar was a necessary. Armstrong v. United States, 80 U. S. (13 Wall.) 154, 20 L. Ed. 614.

[3] Nor can we uphold the view that there is a fatal indefiniteness and uncertainty in the definition expressed in section 6, heretofore quoted. The language that "necessaries shall be deemed to be hoarded," within the meaning of the act, when either held, contracted for, or arranged for by any person "in excess of his reasonable requirements for the use or consumption by himself and dependents for a

874 264 FEDERAL REPORTER

reasonable time," conveys a very clear meaning. The nation being at war, Congress in its wisdom provided general rules as guides for conduct with relation to the use of certain food products. Congress did not see fit to lay down hard and fast rules as to the quantity of sugar that a person could keep or use, but did in general terms provide that no person should hold or arrange for a quantity in excess of his reasonable requirements for use or consumption by himself and dependents for a reasonable time, and authorized the President to make regulations to carry out the provisions of the act, thus leaving the application of the rule of conduct dependent upon varying circumstances. The statute, however, was definite enough to advise every one what was prohibited.

It is obvious that statutes cannot be framed with sufficient precision to fix rules of conduct to cover every circumstance of action. As said in Miller v. Strahl, 239 U. S. 426, 36 Sup. Ct. 147, 60 L. Ed. 364:

"Rules of conduct must necessarily be expressed in general terms, and depend for their application upon circumstances, and circumstances vary. It may be true, as counsel says, that 'men are differently constituted,' some being 'abject cowards, and few only are real heroes'; that the brains of some people work 'rapidly and normally in the face of danger, while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of 'all in one's power' as determined by the circumstances?"

In Nash v. United States, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232, the Supreme Court, through Justice Holmes, pronounced a like doctrine, and reaffirmed it in Omaechevarria v. Idaho, 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763. In the Arizona Employers' Liability Cases, 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, Justice Holmes said:

"There are cases in which even the criminal law requires a man to know facts at his peril. Indeed the criterion which is thought to be free from constitutional objection, the criterion of fault, is the application of an external standard, the conduct of a prudent man in the known circumstances; that is, in doubtful cases, the opinion of the jury, which the defendant has to satisfy at his peril, and which he may miss after giving the matter his best thought."

[4, 5] It is said that there was no proof offered, and that there was no evidence tending to prove, what were the reasonable requirements of Merritt for the use and consumption of sugar by himself and his dependents. But the evidence disclosed the number of dependents in Mr. Merritt's household and the customary manner of managing his household affairs. The orders of the Food Administration restricting the use of sugar during the time of war were of judicial knowledge, and there was testimony that the plaintiff in error had on hand during the period included in the indictment, not only the 500 pounds of sugar which he was charged with hoarding at a certain place, but that he purchased approximately 800 pounds, which were delivered at his residence in Pasadena. It also appeared that the 500 pounds alleged to have been hoarded were not touched during the time mentioned in the indictment.

[6, 7] There is a contention that it was not shown that the plaintiff in error had personal knowledge of the quantity of sugar necessary for use of himself and dependents for any period, or how much was bought or used from time to time. There is evidence, however, that, although sugar was ordered by persons other than the plaintiff in error, nevertheless he authorized and knew of the purchases and of the delivery of the excessive quantities of sugar at his several places. It need not be argued that criminal guilt can be fixed, where one procures another to do a criminal act. United States v. Gooding, 12 Wheat. 468, 6 L. Ed. 693; Stockwell v. United States, 80 U. S. (12 Wall.) 531, 20 L. Ed. 491.

[8] Error is said to have been committed because there was no evidence introduced by the government in support of the negative allegations of the indictment. There was no error in this respect, for, after the evidence of the prosecution, it devolved upon defendant on trial to introduce evidence which would bring him within the exceptions of the provisions of the statute. Barlow v. United States, 32 U. S. (7 Pet.) 402, 8 L. Ed. 728.

Defendant challenged for cause a juror named Eastman. The court overruled the challenge, and the defendant contends that the ruling was erroneous. Mr. Eastman was not acquainted with the defendant nor his attorneys; had never had any business relations with Mr. Merritt, or any of his business enterprises; had read about the case, but did not know the facts; never discussed them; remembered in a general way what he had read, and said that from his reading he had an opinion that defendant was guilty. He was then asked on cross-examination whether it would require evidence to remove the opinion he had, "supposing the case was submitted to you now." He answered, "I think I would convict him." Then followed this examination:

"Q. Would you decide against Mr. Merritt on what you read in the newspaper? A. I believe I would. Q. You believe you would. Do you think you could discard that opinion, Mr. Eastman, and decide this case on the evidence? A. I believe I could. Q. And not be influenced by that opinion? A. I think so. Q. Do you think, assuming that if you were in Mr. Merritt's place—and of course this is just for the purpose of testing your mind—and you were being tried, would you feel that you could get a fair trial at the hands of 12 men who felt toward you as you now feel toward Mr. Merritt in this case? A. I would feel I could get a fair trial. Q. You would feel that you could get a fair trial. Would you want to be tried by 12 men who felt toward you as you feel toward this case? A. No; if I were in Mr. Merritt's place, I presume I would not want to be tried by 12 men who feel as I do. Q. In other words, your opinion is of that character that you would expect the man to prove himself innocent? A. I believe I would."

Thereupon he was challenged for cause, and the judge said he would excuse Mr. Eastman, whereupon counsel for the government said:

"We think, your honor, that doesn't come within the provision of the statute there. His opinion, he says, is not based upon any knowledge—any fact—but upon rumor, and he says that he believes that he can give this man a fair trial; notwithstanding the opinion that he has, which is based upon rumor, he can give him a fair trial on the evidence that is produced here in court."

Thereupon the court said:

"Mr. Eastman, as I understand your answer, it is that you feel that, if you were on trial being charged under an indictment, you would not feel that you were getting a fair trial by a jury that had the same opinion that you have. A. I would not go that far. I would not go so far as that, to say I could not get a fair trial. I believe I could decide the case on the evidence.

"The Court: Then you can and will, notwithstanding the opinion you have, fairly and impartially try the matter submitted to you? A. Yes; I will endeavor to be impartial. Q. You do not think the opinion will influence your conduct in this case? A. I don't believe it will.

"Counsel for defendant: Q. You mean by that, Mr. Eastman, that you will discard your opinion? A. I would attempt to."

Thereupon counsel stated that the court would instruct as to the presumption of innocence as against rumors and opinions and everything else, and asked the juror whether he believed he could follow the instructions, and vote in strict conformity with the evidence, and vote not guilty, unless he was convinced by the evidence beyond a reasonable doubt that defendant was guilty. The juror answered:

"A. I believe I could, if the court instructed me to that effect. I would disregard that. * * * I think I could disregard my opinion."

Thereupon the court denied the challenge for cause. The defendant excepted, and peremptorily challenged the juror, and in so doing used his last peremptory challenge.

Section 1076 of the Penal Code of California provides that in a challenge for actual bias no person shall be disqualified by reason of having formed or expressed an opinion upon the matter or cause to be submitted to the jury—

"founded upon public rumor, statements in public journals, or common notoriety: Provided it appear to the court, upon his declaration under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him."

We are not at all ready to say that the juror was incompetent. In Ex parte Spies, 123 U. S. 131, 8 Sup. Ct. 22, 31 L. Ed. 80, the court sustained the action of the trial judge in overruling a challenge of a juror whose frame of mind was very similar to that of Mr. Eastman, and in Dolan v. United States, 116 Fed. 578, 54 C. C. A. 34, this court refused to reverse the action of the trial court in denying a challenge, saying:

"The action of the court in denying challenges for bias interposed by the defendant against these four jurors was founded upon evidence tending to show that they could disregard any opinion they had formed, and try the issues in the case impartially. Besides the court had an opportunity of observing the manner of these jurors under examination, and determining from their conduct whether their declaration of impartiality was to be believed or not. There is nothing in the proceedings or in the testimony to warrant this court in holding that the court below failed to exercise a proper legal discretion in overruling the challenges." Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708.

[9] But, aside from the question of the merits of the ruling, plaintiff in error is not in a position to plead prejudicial error. He challenged the juror peremptorily, and without objection of any kind

to the new juror, or any other juror, proceeded to trial. In People v. Kromphold (conviction of murder) 172 Cal. 512, 157 Pac. 599, complaint was made that the court erred in overruling challenges for cause to jurors on the ground of bias in three instances. The Supreme Court said that it was not necessary to determine whether such challenges, or any of them, should have been allowed, inasmuch as none of the jurors served in the case; each having been excused on a peremptory challenge interposed by the defendant. The court said:

"While defendant exercised all of the 20, peremptory challenges allowed by the law, it was not made to appear that he desired to exercise any additional challenge; or that he had the slightest objection to any juror sworn to try the cause, or any disposition to have any such juror excused. * * * No challenge for cause was interposed by defendant as to any such juror. Under these circumstances, the claim of defendant that the court erred in disallowing his challenge for cause to three jurors who did not serve on the trial is disposed of by People v. Schafer, 161 Cal. 573."

In the Schafer Case the court said:

"Mr. Fraser was subsequently peremptorily challenged by the defendant and did not serve as one of the jurors. While the record shows that the defendant did subsequently exhaust his 10 peremptory challenges, it does not appear that he had occasion or desire to use an additional peremptory challenge, or that each and all of the 12 jurors finally accepted and sworn were not entirely satisfactory to him." Stroud v. United States, 251 U. S. 15, 40 Sup. Ct. 50, 64 L. Ed. ——.

[10] It is said that the prosecuting attorney was guilty of misconduct, in that certain of his remarks were of a violent or prejudicial character. It appears that in the opening statement by counsel for the government he told the jurors that they should consider that at the time of the occurrences alleged in the indictment the United States was engaged in war with the greatest power that ever had been arrayed against civilization in the history of the world, and that the defendant, about the time the war came on, said that people ought to accumulate abundance of food. Other comments are complained of. It would be going very far to say that such comments could have operated to prevent a fair trial. The one statement about the war was an accepted fact of contemporaneous history, while the other was in the nature of what was expected to be proved.

[11] Complaint is made of certain rulings in the admission of evidence. Special stress is laid upon the overruling of objection to a question propounded to a witness as to whether she had ever heard the defendant say anything concerning food. The witness replied that she had heard the defendant say that there would be a shortage of food and that he thought people should try to save something in case there was this shortage. This evidence was relevant, as bearing upon the intent of the defendant Merritt. Schulze v. United States, 259 Fed. 189, 170 C. C. A. 257.

[12] It is said that the court erred in permitting a witness to testify concerning a telephone order for sugar from some one at the home of the defendant Merritt. The witness said that he recognized the voice of the person as that of some one from whom he had previously taken orders for sugar. It was not error for the court to admit this evi-

dence as bearing upon the question of the knowledge of the defendant that those who bought produce for him were inquiring into the price of quantities of sugar.

[13] A witness, an employé of a grocery firm, was asked on cross-examination to give his opinion as to the general quantities of food usually ordered for consumption by persons having families. The purpose of such cross-examination was to offer expert evidence as to what would be the reasonable requirements of a family. We think that the court was right in excluding such evidence. It was for the jury to say whether or not there was hoarding of sugar in excess of the reasonable requirements of the defendant for a reasonable time, and the opinion of the salesman in the grocery store as to what was reasonable was wholly immaterial.

We have carefully examined all the other assignments, and are of the opinion that no substantial ground is shown for disturbing the judgment of the lower court. The judgment is therefore affirmed.

Affirmed.