Littleton, Judge,
delivered the opinion of the court:
When the special act of August 19, 1935, under which this suit was instituted, is interpreted, as it must be in the light of the facts and circumstances obtaining at the time of the actions and orders of the Enforcement Division of the Food Administration in 1918, all of which were fully disclosed to and considered by the Congressional claims committees of the .Senate and the House of Representatives which recommended the passage of the Act, and also when such facts and circumstances, together with the reports of the Senate and House claims committees, are considered in the light of the provisions and intent of section 6 of the Food Control Act of August 10, 1917, we are of opinion that the special act recognized the right of plaintiffs to relief and for compensation for such actual loss, if any, as might be found to have been sustained by reason of the action of the Enforcement Division of the Food Administration in directing and compelling plaintiffs to immediately sell the cheese in question. To that end the special act confers jurisdiction upon this court to hear, consider, and determine the claim on its merits and to enter judgment for the amount of such actual *23 loss, if any, without interest, notwithstanding the lapse of time or the statute of limitation or the tortious character of the action.
The record discloses that the bill, which on August 19, 1935, became the special act under which this suit was instituted, was introduced in the Senate and the House of Representatives about 1924. At that time, enactment of the bill for the relief of plaintiffs was opposed on behalf of the government, on the ground that “the claim is wholly without merit.” This opposition to the bill was set forth in a lengthy memorandum of February 28, 1924, to the chairman of the Senate claims committee by the former chief auditor, Enforcement Division of the Food Administration, who was then an employee of the United States Grain Corporation of the Commerce Department and the custodian of the records, of the former Food Administration. Hearings were held before the Senate claims committee March 3, 1924. Witnesses were called and examined before the committee by counsel for plaintiffs and the various documents were identified and received in evidence. The former chief auditor of the Enforcement Division of the Food Administration appeared in opposition to the passage of the bill and cross-examined all of the witnesses produced on behalf of plaintiffs.
Subsequently, in February 1930, a hearing on the bill which subsequently became the special act in this case was held before the claims committee of the House of Representatives. Evidence, oral and documentary, was then presented to the committee, and the House Claims Committee, as had the Senate Claims Committee, went specifically into the facts and circumstances surrounding the purchases of cheese by plaintiffs as well as the facts and circumstances concerning the actions and orders of the Enforcement Division of the Food Administration in January 1918 ordering and compelling plaintiffs .to sell the entire amount of cheese on hand within three months thereafter. All the facts and. circumstances were considered by the committee in connection with the Food Control Act of August 10,1917, in order to ascertain, as the committee stated, whether the facts and circumstances justified the conclusion that plaintiffs should be compensated for any actual loss sustained by reason of the- *24 enforced orders of the Food Administration under the supposed authority of section 6 of the Food Control Act of August 10, 1917, — in other words, whether the cheese purchases of plaintiffs made in good faith and in the ordinary course of business prior to the enactment of the Food Control Act, and on hand at the time that act was approved, constituted a violation of the statute, and whether the cheese purchases completed in May, June, and July 1917 constituted a transaction which a reasonably prudent man familiar with the trade relating to that character of commodity would consider a reasonable and legitimate transaction. Subsequent to the hearing before the claims committee of the House of Eepresentatives a written memorandum on behalf of the former Food Administration in opposition to the passage of the special act was transmitted to the committee on March 10, 1980, by the former Food Administration officer.
During the hearings before the Senate and the House of Representatives claims committees, it was pointed out by the committees that they were not interested in evidence as to the details of the claim or the amount of loss but that they were interested in the question whether the cheese purchases prior to the enactment of the Food Control Act constituted a reasonable business transaction of such a character as to justify the Congress in concluding that claimant was entitled to relief. Subsequent to the above-mentioned hearings, and upon the evidence submitted, the Senate and the House claims committees,[1] in their reports recommending passage of the special act, stated—
The facts before this committee are believed to show that claimants are entitled to relief. Your committee, however, does not here pass upon the question of the amount to which claimants may be reasonably entitled, but recommends that-this question be referred, as contemplated in the bill, to the Court of Claims for proper adjudication.
The question which the special act in this case leaves open for determination is the amount of the actual loss suffered *25 because of tbe actions of the Food Administration directing and compelling the sale of the cheese. In Edwards v. United States, 79 C. Cls. 436, it was held that
The authority of Congress to prescribe the basis on which a claim shall be adjudicated, that is, to prescribe the conditions under, which a citizen may be compensated for losses suffered under a contract, or even where no contract exists, or to create a liability on the part of the government where no legal liability in fact exists and to waive any legal defense on the part of the government, is no longer subject to question.
See also, Nock v. United States, 2 C. Cls. 451; Boudinot v. United States, 18 C. Cls. 716, 728; The American Trading Co. v. The Chinese Indemnity Fund, 47 C. Cls. 563; Southern Pacific Co. v. United States, 68 C. Cls. 223; Garrett v. United States, 70 C. Cls. 304; Alcoch v. United States, 74 C. Cls. 308, 375. The evidence shows that the actual loss sustained by George D. Mansfield by reason of the action of the Federal Food Administration, Division of Enforcement, in directing and compelling him to sell the 3,672,661 pounds of cheese theretofore purchased by him in the regular course of business prior to the passage of the special food act of August 19, 1935, was $122,919.40 (finding 9). This is the amount which, under the jurisdictional act, plaintiff, George D. Mansfield, is entitled to recover, without interest.
If it be assumed, as is insisted on behalf of the defendant, that the special act does not recognize a liability for the actual loss sustained by plaintiffs, because of the action of the Enforcement Division of the Food Administration, we are, nevertheless, of the opinion that upon the facts and circumstances disclosed by the record plaintiffs are entitled to recover. Under the facts and circumstances obtaining, the actions and orders of the Enforcement Division of the Food Administration were, we think, clearly beyond the provisions and intent of sections 4 and 6 of the Food Control Act approved August 10, 1917. Those sections made it unlawful for any person to willfully hoard any necessaries, and necessaries were not deemed to be hoarded within the meaning of that act unless they were (a) held, contracted for, or arranged for by any person in a quantity *26 in excess of bis reasonable requirements for use or consumption by himself or dependents for a reasonable time; (b) held, contracted for, or arranged for by any manufacturer, wholesaler, retailer, or other dealer in a quantity in excess of the reasonable requirements of his business for use or sale by him for a reasonable time, or reasonably required to furnish necessaries produced in surplus quantities seasonably through the period of scant or no production; or (c) withheld, whether by possession or under any contract or arrangement, from the market by any person for the purpose of unreasonably increasing or diminishing the price. The facts and circumstances existing and known at the time of the actions and orders of the Enforcement Division of - the Food Administration in January 1918 show clearly that plaintiffs were not willfully hoarding necessaries and that the purchases which Mansfield first decided to make in March 1917, and which purchases he actually made during the period of surplus production in May, June, and early July, 1917, were not unreasonable within the meaning of any of the provisions of section 6 from the standpoint of an ordinary business transaction by one dealing in cheese products. The total purchases of approximately 3,600,000 pounds: of cheese compared to the total production of 270,000,000 pounds at that time was not such a transaction as would have the effect of unreasonably increasing the general market price when held in storage for a reasonable curing period. The regulatory provisions of section 6 of the Food Control Act were intended, as the act expressly stated, to be applied reasonably and, obviously, in accordance with the reasonable and well-known rules and practices of the trade relating to various food products. This the Enforcement Division of the Food Administration failed, in the instant case, to do. On the contrary the Enforcement Division, when it found that plaintiff Mansfield prior to the enactment of the Food Control Act had purchased in due course and in a reasonable business transaction a quantity of cheese which he had placed in storage for a reasonable curing period, as was customary in that trade, commanded plaintiff under threat of seizure of the cheese and of criminal prosecution to immediately sell the entire amount of the cheese regardless *27 of price and of whether or not he sustained a loss or made a profit. When plaintiffs were ordered by the Enforcement Division of the Food Administration early in January 1918 to immediately sell the cheese, they complied with the order with the result that an actual loss, including interest, carrying charges, and freight, of $122,919.40 was sustained. The evidence shows that if the Enforcement Division of the Food Administration had allowed plaintiffs a longer period within which to sell or had allowed plaintiffs to place the cheese upon the market and sell it after a reasonable curing period as the Act of August 10, 1917, seems to have contemplated, and which was recognized in the cheese trade as being reasonable and necessary, the cheese could have been sold at such a price as would not have resulted in any actual loss. We think it is clear from the provisions of sections 4 and 6 of the Food Control Act of August 10, 1917, that seizure, forced sale, or criminal prosecution was not authorized in the absence of facts to establish a willful hoarding of food products. Such facts did not exist in this case. Moreover, we think the Food Control Act contemplated in a case such as the one at bar that if it should be deemed advisable by the Food Administration that any food supplies previously purchased in good faith and on hand at the time of the enactment of the act be placed on the market that this should be done as nearly as possible in accordance with the usual and the recognized practices of the trade. In passing upon the constitutionality of certain penal provisions of the act of August 10, 1917, the Supreme Court in United States v. Cohen Grocery Co., 255 U. S. 81, held invalid the provisions of Section 4 which made it an offense for any person “willfully to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries.” Those provisions were declared invalid on the ground that they fixed no ascertainable standard of guilt and were inadequate to inform persons accused of violations of the nature of the accusation against them, and on the further ground that the section did not forbid any specific or definite act but left open the widest conceivable inquiry, the scope of which no one could foresee and the result of which no one could foreshadow or adequately guard against. Following the decision *28 in the Cohen case, supra, the Supreme Court in Merritt v. United States, 255 U. S. 579, reversed, upon confession of error, the decision of the lower court, 264 Fed. 870, holding constitutional and sustaining a conviction under the hoarding provisions.
The Mansfield Company became dissolved in June 1928 and George D. Mansfield, as the owner of all its stock, became the owner by operation of law of whatever interest the Mansfield Company may have had in the claim. Judgment will be entered in favor of George D. Mansfield for $122, 919.40. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.