**SUPER et al. v. WORK, Secretary of the Interior, et al.**

(Court of Appeals of District of Columbia. Submitted December 5, 1924. Decided January 5, 1925.)

No. 4110.

1. Indians ⬅️10—Rights acquired in California land prior to cession to United States by Mexico were lost by failure to present claims to commission under statute.

Rights of Indians in land within the Klamath National Forest in state of California, acquired prior to cession of California to United States by Mexico, *held* lost by failure to present claims to commission for adjudication under Act Cong. March 3, 1851, within two years after creation of commission under such act.

2. Indians ⬅️2—Congress has plenary authority over tribal relations of Indians.

Congress exercises plenary authority over tribal relations of Indians; such power being political, and not judicial, in its nature.

3. Indians ⬅️3—Congress may abrogate provisions of Indian treaty.

Congress, in the exercise of its paramount power over the property of Indians by reason of guardianship, may abrogate even the provisions of an Indian treaty.

4. Indians ⬅️10—Congress empowered to determine rights of Indians to occupancy of land.

Congress may determine the rights of Indians to the occupancy of lands, and if injury occurs the relief must be sought from Congress, and not from the courts.

Appeal from Supreme Court of District of Columbia.

Bill by Steve Super and another against Hubert Work, Secretary of the Interior, as a member of the Federal Power Commission, and others. Decree of dismissal, and plaintiffs appeal. Affirmed.

J. C. Wise, of Washington, D. C., for appellants.

C. E. Wright and H. L. Underwood, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, identifying themselves as members of the Karok or Peh-tsick tribe of Indians, citizens of the United States, filed a bill in equity in the Supreme Court of the District of Columbia for an injunction to restrain the Secretary of the Interior, the Secretary of Agriculture, and the Secretary of War, constituting the Federal Power Commission, from approving applications presented to the commission by the Electro-Metals Company for a permit to establish certain power projects within the boundaries of the Klamath National Forest in the state of California. It is averred that these Indians have acquired rights by virtue of long-continued possession and occupancy of the lands embraced within said national forest, which entitle them to the relief sought. A special restraining order is also prayed against the Secretary of Agriculture to enjoin him, his agents and employees, from trespassing upon these lands or from other interference with plaintiffs' asserted right of possession.

The Secretary of War was not served with process, and he is not, therefore, a party to this appeal. Separate motions to dismiss the bill were filed by the Secretary of the Interior and the Secretary of Agriculture, and from a decree sustaining the motions and dismissing the bill this appeal was prosecuted.

Passing the serious question of jurisdiction arising from the suggestion that this is in effect a suit against the United States (Minnesota v. Hitchcock, 185 U. S. 373, 22 S. Ct. 650, 46 L. Ed. 954; Louisiana v. McAdoo, 234 U. S. 627, 34 S. Ct. 938, 58 L. Ed. 1506), we will proceed at once to the principal ground upon which the plaintiffs claim relief. It is urged that the rights of plaintiff Indians to the use and occu-

pancy of the lands embraced within the forest reserve originated long prior to the cession of California to the United States by Mexico, and that they have asserted open, notorious, and adverse occupancy of these lands ever since. It is also claimed that not only were the rights of the Indians recognized by the governments of Spain and Mexico, but that these rights were protected by the Treaty of Guadalupe Hidalgo (9 Stat. 922), under which the United States acquired from the government of Mexico the territory within which the lands in question are embraced.

[1] It is unnecessary to consider the rights of plaintiff Indians as they are alleged to have existed under the government of Mexico prior to the treaty, or to consider the terms of the treaty itself. By the Act of Congress of March 3, 1851 (9 Stat. 631), provision was made for the adjudication of private land claims, arising within the state of California, through a commission created to consider and pass upon the validity of such claims. The act required that all claims existing under the government of Mexico to lands within said state should be presented to the commission within two years, and in default of presenting the claim within that time it should be regarded as abandoned. Provision was made for the review of the action of the commission by the District Court for the District of California and by the Supreme Court of the United States. It provided for the issuance of patents by the United States to claimants whose rights to lands had been confirmed by the commission.

No claim was ever made on behalf of plaintiff Indians under the act of 1851, and they must therefore be treated as having lost, through abandonment, any claim which they may have had. Barker v. Harvey, 181 U. S. 481, 21 S. Ct. 690, 45 L. Ed. 963; United States v. Title Insurance & Trust Co. et al., 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110. These cases, like the present, involved the rights of Indians to occupy, use, and enjoy lands in California based upon their use and occupancy under the governments of Spain and Mexico, and their continued use and occupancy since the cession by Mexico to the United States. Referring to the former case of Barker v.

Harvey, the court, in its opinion in the latter case, said: "This court, after observing that under the treaty with Mexico and the rules of international law the United States was bound to respect the rights of private property in the ceded territory, said there could be no doubt of the power of the United States, consistently with such obligation, to provide reasonable means for determining the validity of all titles within the ceded territory, to require all claims to lands therein to be presented for examination, and to declare that all not presented should be regarded as abandoned. The court further said the purpose of the act of 1851 was to give repose to titles as well as to fulfill treaty obligations, and that it not only permitted but required all claims to be presented to the commission, and barred all from future assertion which were not presented within the two years."

[2-4] The rights of the Indians in the present case differ from those in the cases above cited only to the extent that in those cases they were Mission Indians, while in the present case, at and prior to the cession by Mexico, the plaintiff Indians were merely roving bands. Congress at all times exercises plenary authority over the tribal relations of Indians. The power thus exercised is in its nature political, and not judicial. It has accordingly been held not to be subject to the control of the judicial department of the government. The power of Congress is so absolute that it may abrogate even the provisions of an Indian treaty, which authority arises from its paramount power over the property of Indians by reason of its exercise of guardianship. Congress may in the exercise of this power determine the rights of Indians to the occupancy of lands, and, if injury occurs, the relief must be sought from Congress, and not from the courts. Lone Wolf v. Hitchcock, 187 U. S. 553, 565, 23 S. Ct. 216, 47 L. Ed. 299.

It is unnecessary to consider the other contentions here made, since the failure to present their claims at the proper time, and their consequent abandonment, is fatal.

The decree is affirmed, with costs.

Appeal to the Supreme Court of the United States allowed January 17, 1925.