Whaley, Chief Justice,
delivered the opinion of the court:
This case comes to the court under a special- private act of May 18,1928, 45 Stat. 602, as amended by the act of April 29,1930, 46'Stat. 259.
In 1850 the Congress passed an act carrying an appropriation “to enable the President to hold treaties with the various Indian tribes in the State of California.” (9 Stat. 544,558.) Commissioners to negotiate treaties were appointed by the President and during the period from March 1851 to January 1852 negotiated eighteen separate treaties with some of the tribes and bands of Indians of California. These tribes and bands of Indians constituted about one-third to one-half of the total number of members of the tribes and bands in California at that time. The treaties were of the same general character. In each treaty there was set apart a certain district of country to be forever held for the sole use and occupancy of said tribes of Indians. The Indian tribes on their part agreed to forever quit claim to the United States any and all lands to which they or either of them:now or may ever have had claim or title whatsoever. There were provisions made for the supplying by the United States to the Indians of cattle, farming implements, blacksmiths, and schools and teachers, to be maintained and paid for by the Government for a definite period. These treaties were transmitted ’to the Senate by President Fillmore. On June 28, 1852, the Senate refused to ratify all and several of the eighteen treaties.
The Indians of California consist of wandering bands, tribes, and small groups, who had been roving over the same territory during the period under the Spanish and Mexican ownership, before the treaty between Mexico and the United States whereby California.was acquired by the United States. They had no separate reservations and occupied and owned no permanent sections of land. They and their forebears had roved over this country for centuries. They possessed *592 no title to any particular real property existing under the Mexican law in California. Hayt, Admn. v. United States and Utah Indians, 38 C. Cls. 455. Ex. Doc. No. 50, H. ft. 30th Cong. 2d Sess. p. 77.
These Indians did not qualify before the Commission created by the Act of March 3,1851, 9 Stat. 631, entitled “An Act to -ascertain and settle the private land claims in the State of California.” Therefore whatever lands they may have claimed became a part of the public domain of the United States. Barker v. Harvey, 181 U. S. 481; United States v. Title Insurance & Trust Oo. et al., 265 U. S. 472.
However, these Indians were roving over the State of California when the “gold rush” began and the white men paid no attention to any claims the Indians asserted to any portion of this territory. This resulted in bloody clashes and reprisals.
The object of the National Government in providing a Commission to negotiate treaties with these Indians was to localize them on particular tracts and confine them in certain defined sections. There was no recognition of a claim of cession under the Mexican or Spanish law or the use and occupancy of any definite country. It was simply a fair and just solution of a very troublesome situation in a newly acquired territory and was to avoid clashes between the white and red men. The Government simply held out a promise to-the Indians that certain territory would be ceded to them for their permanent residence and certain provisions were made to civilize what were considered uncivilized tribes, bands, and groups. The Indians, bands, and tribes, who signed these eighteen treaties, on their part agreed to move to these reservations, relinquish all claim to any and all other lands,-and to-abide in peace,and harmony with the white man.
' There was a promise made to these tribes and bands of Indians and accepted by them but the treaties were never ratified so the promise was never fulfilled.
From 1852 this matter lay dormant for almost eighty years. In 1928, Congress passed a private act, 45 Stat. 602, mpfa, which reads as follows:
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That for the purposes of this act the Indians *593 of California shall be defined to be all Indians who were residing in the State of California on June 1, 1852, and their descendants now living in said State.
Sec. 2. All claims of whatsoever nature the Indians of California as defined in Section 1 of this act may-have against the United States by reason of lands taken from them in the State of California by the United States without compensation, or for the xailure or refusal of the United States to compensate them for their interest in lands in said State which the United States appropriated to its own purposes without the consent of said Indians, may be submitted to the Court of Claims by the Attorney General of the State of California acting for and on behalf of said Indians for determination of the equitable amount due said Indians from the United States; and jurisdiction is hereby conferred upon the Court of Claims of the United States, with the right of either party to appeal to the Supreme Court of the United States, to hear and determine all such equitable claims of said Indians against the United States and to render final decree thereon.

It is hereby declared that the loss to the said Indians on account of their failure to secure the lands and compensation provided for in the eighteen unratified treaties is sufficient grownd for equitable relief.

Sec. 3. If any claim or claims be submitted to said courts, they shall settle the equitable rights therein, notwithstanding lapse of time or statutes of limitation or the fact that the said claim or claims have not been presented to any other tribunal, including the Commission created by the Act of March 3, 1851 (Ninth Statutes at Large, page 631) : Provided, That any decree for said Indians shall be for an amount equal to the just value of the compensation provided or proposed for the Indians in those certain eighteen unratified treaties executed by the chiefs and head men of the several tribes and bands of Indians of California and submitted to the Senate of the United States by the President of the United States for ratification on the 1st day of June, 1852, including the lands described therein at $1.25 per .acre. Any payment which may have been made by the United States or moneys heretofore or hereafter expended to date of award for the benefit of the Indians of California, made under specific appropriations for the support, education, health, and civilization of Indians in California, including purchases of land, shall not be pleaded as an estoppel but may be pleaded by wray of set-off.
*594 Seo. 4. The claims of the Indians of California under the provisions of this act shall be presented by petition, which shall be filed within three years after the passage of this act. Said petition shall be subject to amendment. The petition shall be signed and verified by the Attorney General of the State of California. Verification may be upon information and belief as to the facts alleged. Official letters, papers, documents, and public records, or certified copies thereof, may be used in evidence, and the departments of the Government shall give the said attorney access to such papers, correspondence, or furnish such certified copies of record as may be necessary in the premises free of cost.
Seo. ,5. In the event that the Court renders judgment against the United States under the provisions of this Act, it shall decree such amount as it finds reasonable to be paid to the State of California to reimburse the State for all necessary costs and expenses incurred by said State, other than attorney fees: Provided, That no reimbursement shall be made to the State of California for the services rendered by its Attorney General.
Seo. 6. The amount of any judgment shall be placed in the Treasury of the United States to the credit of the Indians of California and shall draw interest at the rate of 4 per centum per annum and shall be thereafter subject to appropriation by Congress for educational, health, industrial, and other purposes for the benefit of said Indians, including the purchase of lands and building of homes, and no part of said judgment shall be paid out in per capita payments to said Indians: Provided, That the Secretary of the Treasury is authorized and directed to pay to the State of California, out of the proceeds of the judgment when appropriated, the amount decreed by the Court to be due said State, as provided in section 5 of this Act.
Sec. 7. For the purpose of determining who are entitled to be enrolled as Indians of California, as provided in section 1 hereof, the Secretary of the Interior, under such rules and regulations as he may prescribe, shall cause a roll to be made of persons entitled to enrollment. Any person claiming to be entitled to enrollment may within two years after the approval of this Act, make an application in writing to the Secretary of the Interior for enrollment. At any time within three years of the approval of this Act the Secretary shall have the right to alter and revise the roll, at the expiration of which time said roll shall' be closed for all purposes and thereafter no additional names shall be added thereto: Pro *595 vided, That the Secretary of the Interior, under such rules and regulations as he may prescribe, shall also cause to be made, within the specified time herein, a roll of all Indians in California other than Indians that come within the provisions of section 1 of this Act. [Italics ours.]
On August 14, 1929, the Attorney General of California, acting in his official capacity, duly filed in the Court of Claims of the United States a petition verified by him. The title of the case is “The Indians of California, claimants, by U. S. Webb, Attorney General of the State of California.” A general traverse was filed by the Government.
After the period of three years, mentioned in the above act, in which a petition could be filed by the Attorney General of California, had expired, the Attorney General applied to the Court of Claims for leave to amend the original petition, which was granted and on March 14, 1932, an amended petition was filed. The defendant did not file a general traverse or other pleading to the amended petition. Both parties filed requests for findings of fact.
The plaintiffs’ position is that, under the terms of the jurisdictional act, the Congress has admitted or assumed a limited liability arising out of the failure and refusal of the Senate to ratify the eighteen treaties, and the Court is only called upon to ascertain the amount due and enter a decree.
The defendant contends:
(1) That the original petition not being within the authorization expressed in the jurisdictional act, the Court is without jurisdiction of the amended petition, it having been filed after the expiration of the limitation contained in the jurisdictional act.
(2) That the claim arising out of the alleged failure of the United States to protect the asserted property rights of the plaintiff Indians under Spanish and Mexican law is without basis for the reason that they had no property rights as asserted.
(3) That the language of the jurisdictional act relied upon by the plaintiffs as creating a right of recovery through an implied ratification of the eighteen unratified treaties does not have that effect, but simply means that “equitable relief” *596 •on the basis prescribed in the act shall be applied by this Court if the failure of the United States to perform its assumed •obligation under the treaty of Guadelupe Hidalgo and protect the property rights of the Indians of California presents :a basis for judicial relief.
(4) If the provision relied upon by the plaintiffs creates a liability out of an alleged moral obligation, power to adjudicate the claim arising thereunder is not conferred upon the Court by the terms of the jurisdictional act.
(5) The provision in question does not create or assume a liability but directs the Court to adjudicate a moral claim through the application of legal principles, and is therefore invalid.
The first contention of the defendant involves a question of pleading. It is asserted that the Attorney General of California, who, alone, was authorized and empowered to bring a suit in the Court of Claims for all the Indians of California, has failed to do so and has only sued for those bands and tribes mentioned in the eighteen unratified treaties .and, as a consequence, a decree, if any, could only be entered in behalf of those bands and tribes.
In construing a pleading, the complaint as a whole must ho considered and not particular and segregated sentences or paragraphs. The jurisdictional act which permits the suit to be brought must also be considered along with the claims made in the petition. If the petition sets out a cause of action within the purview of the jurisdictional act and also contains other assertions or claims which do not fall within the rights conferred by the act, the latter can be excluded .as surplusage and yet a good cause of action remains. Special .acts are strictly construed as a general rule but there are exceptions to the rule in Indian cases under the broad doctrine that the Indians are wards of the Nation. The well-established rule is that in construing a special act the Court will take into consideration the language of the act, the nature of the case, and the surrounding circumstances in order to ascertain and carry out the legislative intent. This rule goes back to the case of Braden v. United States, 16 C. Cls. 389, 411, and has been repeatedly followed in cases too numerous to •cite.
*597 The original complaint starts out by alleging that “the Indians of California, as hereinafter defined, acting herein by and through U. S. Webb, Attorney General of the State of California, * * * respectfully present the following-facts.”
There was no Nation, band, or tribe known or identified as the “Indians of California.” As the defendant so aptly says, it is a term of art. But the jurisdictional act designates the Indians of California as “all Indians who were residing in the State of California on June 1,1852, and their descendants now living in said State.”
In Paragraph XV of the original petition it is alleged “this petition is presented by the Attorney General of the State of California in conformity with and under authority of that certain Act of Congress, Public Law No. 428, 70th Congress, First Session, approved May 18,1928, acting herein for and on behalf of the Indians of California as defined in said Act, which Act is entitled and reads as follows.” [Italics ours.]
The Indians of California, as defined in the jurisdictional act, are oil Indians who were on June 1,1852, residing in that State, and their living descendants. It is true that Paragraph XVII of the original petition alleges the claimants are those Indians mentioned in the eighteen treaties. But this allegation can be stricken from the petition and there still remains sufficient to show a good cause of action as granted by the jurisdictional act. This allegation is mere surplusage and under the terms of the special act could be given no application. The act would not permit these particular Indians alone to either maintain a suit or to recover should the Court decree an award. In our opinion, the petition, taken as a whole, presents a cause of action for ail Indians of California.
It may be mentioned also that, after the three year limitation clause in which a petition shall be filed by the Attorney General in behalf of these Indians, there follows the clause “Said petition shall be subject to amendment.” The Congress must have felt that amendments to the original petition might be necessary when this clause was inserted. The insertion of this sentence after the limitation in which a petition *598 should first be filed could only mean that after the petition had been filed within the three years it was subject to amendment.
The plaintiffs filed, after the three-year period had expired, a motion to amend, and the Court, after due consideration, granted the motion, and an amended petition was filed. The amended petition simply clarified certain doubtful allegations, and made them more definite. There was no enlargement of the amount sought to be recovered in the orginal petition.
A liberal rule should be applied when the defendant has notice from the beginning that the plaintiffs set up and are trying to enforce a claim against it because of special conduct. N. Y. Central R. R. v. Kinney, 260 U. S. 340, 346.
The cases cited by the defendant are inapposite.
In Choate v. Trapp, 224 U. S. 665, 675, the rule of construction, recognized without exception for over a century, has been “doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith.”
The second contention of the defendant is an assertion of law. It is contended that, as these Indians had no claim under Spanish and Mexican law, any claim arising out of the failure of the United States to protect their property rights would be futile. This would doubtless be true if any such claim were made, but none is made.
The claim sued on is one arising under an act of Congress that says the promise made to these Indians in negotiating treaties with them, and afterwards not carrying out that promise by ratification, is sufficient to constitute an equitable claim allowing all the Indians of California to recover the amount specified in these unratified treaties, both in the value of the land promised to be set aside and the other compensation provided, and granted a right of action thereon.
Congress ripened the promise into an equitable claim. The failure of Congress to set apart certain reservations for these Indians in 1852, and its failure to provide the goods, chattels, school houses, teachers, etc. was recognized as a loss to these Indians and was made by the Congress an equitable claim to be paid in money value.
*599 The act does not in any place set out a legal claim. It is the recognition of an equitable claim and is repeatedly so referred to in the jurisdictional act. Congress in its plenary powers can recognize an equitable, a moral claim, or any claim on the conscience of the nation. United States v. Realty Company, 163 U. S. 427, 440, 441.
In the instant case this is clearly admitted and recognized in the last paragraph of section 2 of the jurisdictional act which reads as follows:
It is hereby declared that the loss to the said Indians on account of their failure to secure the lands and compensation provided for in the eighteen unratified treaties is sufficient ground for equitable relief. [Italics ours.]
It is in the power of Congress to grant any kind of relief which its wisdom dictates. There have been many instances of the recognition of moral claims, even gifts and bounties. Under its general jurisdictional powers the Court of Claims cannot pass on a moral claim, nor can it recognize a case sounding in tort. Radel Oyster Co. v. United States, 78 C. Cls. 816; Mansfield et al. v. United States, 89 C. Cls. 12; Stubbs v. United States, 86 C. Cls. 152. But the Congress has repeatedly sent tort cases to this Court for adjudication under special jurisdictional acts. The Congress can confer on this Court jurisdiction to determine any sort of claim which the Congress has converted into a right of action. United States v. Realty Co., supra.
In the instant case the Congress not only has recognized an equitable claim but has gone still further. The amount of recovery has been almost definitely defined. The land which is described in the respective treaties is to be valued at a fixed price. The chattels and other articles promised to be supplied are capable of having their value ascertained as of the date of the treaties. The value per acre is fixed in the jurisdictional act and it is only necessary to ascertain the number of acres in the reservations mentioned in the eighteen treaties. The chattels and services are named in the treaties so it is only necessary to ascertain the amount which would purchase them at the time when Congress failed to ratify the treaties.
As against this amount the jurisdictional act provides the Government may plead by way of set off “any payment which *600 may have been made by the United States or moneys heretofore or hereafter expended to date of award for the benefit of the Indians of California made under specific appropriations for the support, education, health, and civilization'óf Indians in California, including purchases of land.” [Italics ours.]
There can be no denial of the fact that, when these Indians did not receive the eighteen separate tracts of land set aside for them in the treaties and the other perquisites therein mentioned, a loss was sustained by them which would not have happened if the Congress had carried out the promise by ratification of the treaties. Years afterward, the Congress recognized this loss to these Indians, and attempted to make restitution in money by converting this loss into an equitable claim and directing this Court to ascertain the amount in dollars and cents and enter a decree when the amount was ascertained.
This case does not involve the payment for land of which the Indians had a cession, or use and occupancy. No legal claim under any treaty or act of Congress setting aside land for the use of the Indians of California can be sustained. The decree can only be for a fixed amount of compensation. There has been no taking which under the Constitution would require just compensation to be paid and therefore would involve interest. The amount awarded would only be in full settlement of a recognized equitable claim which the Congress has ordered the Court to ascertain, and, after ascertainment, to enter a decree. The'amount so recovered is not to go to the Indians of California per capita nor is it to be disbursed in any other individual manner. Under the jurisdictional act it is to be placed under the care of the Secretary of the Treasury, and draw four percent interest. That is not all. The Congress alone can appropriate from the fund,. so established for the Indians of California, from time to time, such sum as, in its discretion, seems wise, and even these appropriations are to be “for educational, health, industrial and other purposes for the benefit of said Indians including the purchase of lands and building of homes”— beneficial purposes for the elevation and progress of these Indians to better citizenship.
The other contentions of the defendant are answered *601 by what has been said above. Further observation is unnecessary.
As this case is brought under Rule 39 (a), which provides the Court should decide only the law and facts, a judgment cannot be entered.
The Court is of the opinion that the plaintiffs are entitled to recover the value of the land set out and described in the eighteen unratified treaties at the price per acre named in the jurisdictional act, and the value of the other articles, chattels, and services as of the date of the failure of the Senate to ratify the treaties. As this claim does not involve a taking of land by the Government for which just compensation shall be made, but only compensation for an equitable claim, no allowance of interest is permitted or allowable.
The case will be referred to a Commissioner of the Court to ascertain the values and report to the Court. If a stipulation cannot be entered into, both parties may take testimony on these issues.
It is so ordered.
Madden, Judge; Jones, Judge; Whitaker, Judge; and Littleton, Judge, concur.