**Charles DONAHUE et al., Plaintiffs,**

**v.**

**Earl A. BUTZ, Secretary of Agriculture, et al., Defendants.**

**No. 72–1626.**

United States District Court,
N. D. California.

July 30, 1973.

Reid Peyton Chambers, Los Angeles, George Forman, Bruce R. Greene, California Indian Legal Services, Berkeley, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Rodney H. Hamblin, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

In this suit by twenty-five individual plaintiffs against the Secretaries of Agriculture and Interior, the amended complaint alleges in substance and effect that plaintiffs are members of an unorganized band of Karuk Indians without any governing body recognized by the Secretary of the Interior; that the Karuks had once occupied certain lands in what is now northeastern Humboldt and southwestern Siskiyou Counties, part of the Klamath River watershed, now administered by the Secretary of the Interior as the Klamath National Forest and the Six Rivers National Forest; that in 1851 officers of the United States negotiated a treaty with the Karuks but wilfully and maliciously refused to submit it to the United States Senate for ratification; that, nevertheless, the Karuks were induced to move off their lands by promises to locate them on a reservation; that predecessors of defendants then conveyed much of the land to private persons and appropriated the rest for their own use without reserving any of the lands for the use of the Karuks; that three specified portions of these lands, Amaikiara, Inam and Katimin are sacredly and uniquely essential to the practice of the Karuk religion and that reservation of at least some other portions of the lands for use of the Karuks is essential to the continuation of the Karuk culture; that the failure of defendants to reserve some of these lands for the Karuks violates the due process of law provisions of the United States Constitution and also the fiduciary responsibility of federal officials to plaintiffs as wards of the government.

Plaintiffs' amended complaint invokes the jurisdiction of this court only under 28 U.S.C. Sec. 1331, (action arising under the Constitution, laws or treaties of the United States) and 28 U.S.C. Sec. 1361 (mandamus actions).[1]

Plaintiffs pray (1) a declaration that defendants have deprived plaintiffs of their property without due process, de-

---

1. The so-called Mandamus statute, 28 U.S.C. § 1361, upon which plaintiffs rely, does not give this court jurisdiction which it would not otherwise have. White v. Adm. of GSA, 343 F.2d 444 (9th Cir. 1965), pointing out that the mandamus statute does not give this court jurisdiction to compel the government executive to convey government land.

During argument plaintiffs have also asserted jurisdictional reliance on the Administrative Procedure Act, 5 U.S.C. § 701, et seq. There is, however, no allegation that plaintiffs have ever applied for any administrative action which, if denied, might be subject to judicial review by this court. In any event, the Administrative Procedure Act, like the Declaratory Judgment Act, merely provides remedies otherwise within the jurisdiction of the court. Commonwealth v. Connor, 248 F.Supp. 656 (D.C.Mass.1966, aff'd 1 Cir., 366 F.2d 778).

It is also well settled that, although the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, enlarges the range of available remedies, it is not an independent source of district court jurisdiction and presupposes the existence of some judicially remedial right. Schilling v. Rogers, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960).

The amended complaint also refers to 28 U.S.C. Sec. 1337 which, referring to commerce and antitrust matters, seems to be inadvertant and inapplicable.

nied them the free exercise of their religion and have violated the fiduciary obligation of defendants to plaintiffs, (2) an injunction enjoining defendants from occupying or using the lands and ordering defendants to formulate a plan adequately providing lands for the practice of Karuk culture and religion, including exclusive use of the three specifically designated sites.

## THE PENDING MOTIONS

Defendants have moved the court to dismiss the amended complaint or for summary judgment upon the grounds that (1) the issues raised by the complaint are political and non-judicial, i. e., the power of the United States to extinguish Indian title resides in the Congress and the justice of the exercise of that power is not open to inquiry by the courts, citing United States v. Santa Fe, 314 U.S. 339, 347, 62 S.Ct. 248, 86 L.Ed. 260 (1941) and Barker v. Harvey, 181 U. S. 481, 490, 21 S.Ct. 690, 45 L.Ed. 963 (1901); (2) the court has no jurisdiction over the subject matter because certain Acts of Congress provide other methods by which California Indians may raise their claims against the United States, i. e., Act of May 28, 1928, 45 Stat. 602, 25 U.S.C. § 651 et seq., providing that claims of California Indians may be submitted to the Court of Claims by the Attorney General of California; also the Act of August 13, 1946 (25 U. S.C. § 70 et seq.), creating an Indian Claims Commission to hear and determine Indian claims and providing, Section 70(s), that the Court of Claims shall have exclusive jurisdiction to review such determinations, citing Assiniboine v. United States, 121 F.Supp. 906, 910, 128 Ct.Cl. 617 (1954); (3) the government, as sovereign, is immune from this unconsented suit which, although nominally against the Secretaries of Agriculture and Interior, is in effect, against the United States, citing Larsen v. Domestic, 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Fowler v. United States, 258 F.Supp. 638, 646 (C. D.Cal. 1966); (4) the court cannot invade the jurisdiction of other departments in matters of policy to control the discretionary acts of executive officials, citing Huntt v. Virgin Islands, 382 F. 2d 38, 41 (3d Cir. 1967); Cates v. Graves, 281 F.Supp. 951, 955 (E.D.Tenn. 1968).

Defendants also contend that the judgment in Super v. Work, 55 App.D. C. 149, 3 F.2d 90 (1925), wherein the "Karok" Indians claimed lands within the Klamath National Forest is res judicata to the effect that the Karuk Indians have no title thereto; also that in the case of Indians of California v. United States, 98 Ct.Cl. 583 (1943), brought by the California Attorney General in the Court of Claims, pursuant to the Act of May 18, 1928, 25 U.S.C. § 651 et seq., the court found that the Indians were entitled to recover the value of lands taken from them but that the lands taken had become part of the public domain; that in 102 Court of Claims (1944) the court awarded a judgment of $5,024,842; that this judgment is res judicata as to the claimed unratified Karuk treaty which was in issue in that litigation.

## JURISDICTION

Since federal courts have only such jurisdiction as Congress has granted to them, they do not have, absent Congressional grant, jurisdiction merely because Indians who are wards of the federal government are parties to the suit or their personal rights are involved; nor do federal courts have jurisdiction, absent Congressional grant, of controversies which involve a determination of the title to or the possession of Indian allotments while such allotments are held in trust by the United States, 42 C.J.S. Indians §§ 85–86.

Apart from the various statutes above cited by defendant, conferring jurisdiction in certain Indian matters upon the Indian Claims Commission and the Court of Claims, Congress has also conferred jurisdiction on the District Courts, first, of course, 28 U.S.

C. Sec. 1331, granting to District Courts jurisdiction of civil actions arising under the Constitution, laws or treaties of the United States; also 28 U.S.C. Sec. 1362,[2] specifically granting to District Courts jurisdiction of civil actions[3] involving the right of any person in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

The only remaining source of District Court jurisdiction for the pending case is 28 U.S.C. Sec. 1331, granting jurisdiction to District Courts in civil actions wherein the matter in controversy arises under the Constitution, laws or treaties of the United States.

## THE ISSUE

The question is whether plaintiffs have stated a claim, arising under the Constitution, laws or treaties of the United States, upon which the requested relief can be granted by this court.

Plaintiffs concede that their case presents a question of first impression; that no statute has ever directed the defendants to do what they request this court to order them to do and that no court has ever granted such relief in analogous circumstances.

They also concede that the power of this court to direct the setting aside of *some* lands within the Klamath National Forest, including three *specific* sites therein allegedly necessary for the tribe to practice its traditional religion, as a reservation for the Karuk Tribe, can be found in no treaty[4] nor any statute— except insofar as such power might be found in the general jurisdiction conferred by 28 U.S.C. Sec. 1331 and/or the Administrative Procedure Act, 5 U.S.C. § 706 et seq.

They also concede that, insofar as Section 1331 is concerned, there is no constitutional provision nor any treaty[4] under which this case could possibly arise nor any law—except possibly the law declared by the courts of the United States to the effect that the United States has a trust responsibility to the Indians.

2. So far as this Section 1362 is concerned, the Ninth Circuit in Quinault Tribe v. Gallagher, 368 F.2d 648 (9th Cir. 1966) held that this Section 1362 (which is identical with Section 1331 except that 1362 does not contain the $10,000 matter in controversy value requirement) vests jurisdiction in district court over a tribe or band with a governing body duly recognized by the Secretary of the Interior but not over suits assertedly brought by personal plaintiffs under that section. Since in our pending case plaintiffs concede that they are not such a tribe or band recognized by the Secretary of the Interior as would be entitled to sue under Section 1362, that section has no application here. For this reason, plaintiffs, suing as individuals, have invoked Section 1331, alleging that the matter in controversy exceeds the sum of $10,000.

3. So far as these Sections 1353 and 345 are concerned, it is noted that Indians may acquire land in severalty. This is called an allotment. When land has been so allotted it is no longer part of a reservation nor is it tribal land. 42 C.J.S. Indians § 42. Since plaintiffs here do not seek to have land allotted to them in severalty under any statute or treaty, but only to have lands set aside to them as members of a tribal band, it is clear that this case does not involve the right to an allotment within the meaning of these two last-mentioned sections, i. e., 1353 and 25 U.S.C. § 345.

4. So far as any treaty is concerned, although plaintiff's amended complaint alleges that defendant's predecessors in office wilfully and maliciously refused to submit to the United States Senate a certain treaty negotiated with the Karuks and bearing the date of November 4, 1851, the court takes notice that the claimed treaty, which has been lodged with this court, was treaty R among 18 treaties attached as Ex. A to the complaint in Indians of California v. United States, 98 Ct.Cl. 583 (1943), cert. den. 319 U.S. 764, 63 S.Ct. 1324, 87 L.Ed. 1714, supra, brought by the California Attorney General under the Act of May 18, 1928, 25 U.S.C. § 651, supra; also that the court therein specifically noted, p. 585, that said treaty had been, in fact, transmitted on June 1, 1852, by the President of the United States to the Senate which on June 25, 1852 refused ratification to each and all of said 18 treaties. In any event, plaintiffs now concede that said Karuk treaty, unratified by the Senate, cannot serve as a legal basis for any claim by plaintiffs in this action.

That there exists such a trust responsibility of the United States to Indians is, of course, well established. Cherokee v. Georgia, 5 Pet. [30 U.S.] 1, 8 L. Ed. 25 (Marshall, C. J.); United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); Seminole Nation v. United States, 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942).

■ Plaintiff essentially contends that the failure of defendants to set aside for the Karuk Tribe and its members a reservation within the Klamath National Forest, including the three specific sites, is in effect a violation of defendant's trust responsibility and is in that sense a violation of a law "of the United States within the meaning of Section 1331."

More specifically, plaintiffs argue that their pending action is based, not upon "Indian title" to the lands here involved, lands that are undisputably owned by the federal government, but rather upon the ground of improper management of these lands by defendants, i. e., their setting aside of all that land for national forest purposes without establishing reservation for the Karuks cn some part thereof in violation of defendant's trust responsibility.

## PUBLIC LANDS

■ It is fundamental, however, that the ultimate fee, dominion and title to all land—even land to which the native Indians had rights based on actual aboriginal possession and occupancy—vested originally in the discovering power and eventually in the United States. Theoretical Indian title, based on actual possession and occupancy, could not be enforced by an Indian tribe against the United States *unless* there had first been some governmental recognition of its right to some clearly defined area of land. Such recognition is a political question, not a judicial one, and rests entirely in the hands of Congress. Duwamish v. United States, 79 Ct.Cl. 530 (1933) cert. den. 295 U.S. 755, 55 S.Ct. 913, 79 L.Ed. 1698 (1935).

■ The Constitution places the authority to dispose of public land exclusively in the Congress and executive power to convey any interest in these lands must be traced to some Congressional delegation of its authority. Sioux Tribe v. United States, 316 U.S. 317, 326, 62 S.Ct. 1095, 86 L.Ed. 1501 (1942); See also, Tee-Hit-Ton v. United States, 348 U.S. 272, 284–285, 291, 75 S.Ct. 313, 99 L.Ed. 314 (1954); also Super v. Work, cited infra.

■ The moral obligations of the government toward the Indians, whatever they may be, are for the Congress alone to recognize and the courts can exercise only such jurisdiction over the subject as Congress may confer upon them. Blackfeather v. United States, 190 U.S. 368, 373, 23 S.Ct. 772, 47 L.Ed. 1099 (1902); also Super v. Work, infra. Absent some pertinent statutory authorization by the Congress, neither individual Indians nor Indian bands or tribes have any right to demand land of their choice. Finch v. United States, 387 F.2d 13 (10th Cir. 1967).

It has been the custom of the Congress to set aside part of the public domain for the use and occupation of a tribe or tribe of Indians—generally by treaty (prior to 1871) and thereafter by Act of Congress or by Executive Order *when authorized by Act of Congress.* Sioux Tribe v. United States, 94 Ct.Cl. 150, 170, aff'd 316 U.S. 317, 62 S.Ct. 1095, 86 L.Ed. 1501.

## THE RECORD

■ Turning to the record of Congressional action with respect to the lands within the Klamath National Forest, from which the plaintiff Karuks now ask a reservation grant, we note that in May 18, 1928, the Congress by an Act of that date, 25 U.S.C. Secs. 651, 652, recognized that its failure to set apart certain reservations for the Indians of California pursuant to the so-called Eighteen Treaties (including the treaty of November 4, 1851 with the Karuk Tribe hereinabove noted (See Note

4)) was a loss to the Indians and declared:

"It is declared that the loss to the said Indians on account of their failure to secure the lands and compensation provided for in the eighteen unratified treaties is sufficient ground for equitable relief," and further provided that: "All claims of whatsoever nature the Indians of California, as defined in Section 651 of this title may have against the United States by reason of lands taken from them in the State of California by the United States without compensation, or for the failure or refusal of the United States to compensate them for their interest in lands in said State which the United States appropriated to its own purposes without the consent of said Indians, may be submitted to the Court of Claims by the Attorney General of the State of California, acting for and on behalf of said Indians, for determination of the equitable amount due said Indians from the United States; and jurisdiction is conferred upon the Court of Claims of the United States, with the right of either party to appeal to the Supreme Court of the United States, to hear and determine all such equitable claims of said Indians against the United States and to render final decree thereon."

In Indians of California v. United States, 98 Ct.Cl. 583 (1942), brought by the Attorney General of California pursuant to the Act of 1928, the court found and held that the plaintiff California Indians, including the Karuk Tribe, consisted of wandering bands, having no separate reservations and occupying no permanent sections of land, and that they had no title to any particular land under the Mexican law in California; that whatever lands they may have claimed became a part of the public domain of the United States; that the establishment of a commission to negotiate treaties with them was not the recognition of any claim of cession under the Mexican law or the use and occupancy of any definite country; that in the negotiation of the 18 treaties, which were never ratified by the Senate of the United States, a promise was made to the Indians which was never kept by the government; that by the Act of 1928 the Congress recognized an *equitable* claim, a moral claim, which was to be compensated in a money award.

The court said: "This case does not involve the payment for land of which the Indians had a cession or use and occupancy. No legal claim under any treaty or Act of Congress setting aside land for the use of the Indians of California can be sustained."

It should also be noted that even before passage of the Act of 1928, members of the "Karok or Peh-tsick" Tribes had brought a suit in District Court, District of Columbia, Super v. Work, 55 App.D.C. 149, 3 F.2d 90 (1925) to assert their rights and interests in the Klamath National Forest, averring that they had acquired rights therein by virtue of long continued possession and occupancy, so-called "Indian title." The holding of the court in that case had been also to the effect that whatever rights these "Karoks" had in the Klamath National Forest lands prior to cession of California to the United States by Mexico had been long lost by reason of their failure to timely present claims under Act of Congress of March 3, 1851. The court further pointed out that:

". . . Congress at all times exercises plenary authority over the tribal relations of Indians. The power thus exercised is in its nature political, and not judicial. It has accordingly been held not to be subject to the control of the judicial department of the government. The power of Congress is so absolute that it may abrogate even the provisions of an Indian treaty, which authority arises from its paramount power over the property of Indians by reason of its exercise of guardianship. Congress may in the exercise of this power determine the rights of Indians to the occupancy of lands, and, if inju-

ry occurs, the relief must be sought from Congress, and not from the courts."

On this record we are unable to find any Congressional recognition of any Karuk right to any clearly defined area of land within the Klamath National Forest or otherwise. On the contrary, the Congressional intent seems to have been only to recognize a moral obligation to the Karuks and to provide an equitable remedy therefor limiting compensation to the money award provided by the Act of 1928, supra. Nor do we find any intent arising out of treaty, Act of Congress or authorized Executive Order for carving a Karuk reservation out of the Klamath Forest.

## OTHER STATUTES

■ Seeking a basis for their argument that the defendant executive officials are obliged to make such a grant in the exercise of the government's trust responsibility to Indians generally, plaintiffs cite an Act of April 8, 1864, 13th Stat. 39, 38th Congress, —— U.S.C. ——, which merely vests in the President a discretion to set aside four Indian reservations in California of suitable extent for the accommodation of the Indians of that state. There is, however, no allegation that the President has not fulfilled his discretionary obligation under this statute. In fact, in Mattz v. Arnett, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92, 6/11/73, the court, examining this point, noted that the President had in fact established the four California reservations, Round Valley, Hoopa Valley, Mission and Tule Rivers. The court in Mattz, supra, recognized, however, that the statute confers continuing authority to enlarge the reservations. See also, Donnelly v. United States, 228 U.S. 243, 225–259, 33 S.Ct. 449, 57 L.Ed. 820 (1913).

Plaintiffs also cite 16 U.S.C. § 473 which merely gives the President general authority to reduce the area or change the boundaries of national forests; also 25 U.S.C. Secs. 465 and 467

confer upon the Secretary of the Interior authority to acquire interests in lands for the purpose of providing lands for Indians and to proclaim new reservations on such lands, provided that lands added to existing reservations shall be designated for the exclusive use of Indians entitled by enrollment or by tribal membership to residence at such reservations.

Nothing, however, in these statutes supports any claim of right on the part of these plaintiffs to have lands of the Klamath National Forest set aside as reservation land for them or the Karuk Tribe. Nor do these statutes afford a basis for imputing to defendant executive officials any trust responsibility, right or duty to so set aside such lands.

## THE TRUST RESPONSIBILITY THEORY

■ Plaintiff concedes that, standing alone, these statutes merely vest discretion in the executive; plaintiff argues, however, that the trust responsibility of the United States makes the exercise of these statutory powers mandatory in the circumstances here presented, citing such cases as Rockbridge v. Lincoln, 449 F.2d 567, 570 (9th Cir. 1971); Pyramid Lake v. Morton, D.C., 354 F.Supp. 252; Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L. Ed. 622 (1923); United States v. Mason, 412 U.S. 391, 93 S.Ct. 2202, 37 L. Ed.2d 22 (6/4/73) and Lane v. Pueblo of Santa Rosa, 249 U.S. 110, 39 S.Ct. 185, 63 L.Ed. 504 (1918).

In *Cramer*, supra, the court, affirming a Court of Appeals decision directing cancellation of a land patent affecting lands continuously occupied by certain Indians since before 1859, cited the federal trust doctrine saying:

"Unquestionably it has been the policy of the Federal Government from the beginning to respect the Indian right of occupancy . . ." 261 U.S. at 227, [43 S.Ct. at 344]. The fact that such right of occupancy finds no recognition in any statute or other for-

mal governmental action is not conclusive. (261 U.S. at 229, 43 S.Ct. 342). "Since these Indians, with the implied consent of the Government had acquired such rights of occupancy as entitled them to retain possession as against the defendants, no officer or agent of the government had authority to deal with the land upon any other theory. The acceptance of leases for the land from the defendant company by agents of the government was, under the circumstances, unauthorized and could not bind the government; much less could it deprive the Indians of their rights." (261 U.S. at 234, 43 S.Ct. at 346).

In *Cramer,* however, the claimants had been in continuous actual occupancy and enclosed occupancy of the land in question at the time of the challenged patent and the court's ruling was limited to the part of the land so actually occupied and enclosed at that time. In our pending case there is no allegation of any such continuous, actual or enclosed occupancy at the time of the alleged improper misappropriation by defendants of the lands in question. In fact, the amended complaint alleges that these alleged misappropriations occurred "after the Karuk Indians had moved."

In United States v. Mason, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (6/4/73) the court, reversing a Court of Claims decision that the government, as trustee, had improperly paid certain state taxes out of Indian allotment funds, merely recognized that the Court of Claims had jurisdiction under 28 U.S.C. 1491—the basic Court of Claims jurisdictional statute.

Lane v. Pueblo of Santa Rosa, supra, merely notes that the wardship of the federal government over the Indians of a pueblo did not preclude the pueblo, itself, from suing to restrain the Indian Commissioner from disposing of land to which the pueblo had acquired a perfect Spanish-Mexican land title.

Rockbridge v. Lincoln, supra, held that District Court had jurisdiction to review, pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., a refusal of the Commissioner of Indian Affairs to adopt and enforce rules and regulations governing traders doing business on an Indian reservation as contemplated and directed by an Act of Congress, 25 U.S.C. Secs. 261–262, sections which the court properly held should be liberally construed in the light of the government's moral obligations rising out of its assumed wardship over the Indians.

Pyramid Lake v. Morton, supra, was an action by the tribe challenging (after exhausting all administrative action) a regulation issued by the Secretary of the Interior establishing the basis on which certain water would be diverted to an Irrigation District which regulation, the Indians claimed, improperly diverted water that would otherwise flow into Pyramid Lake located on their reservation and their principal source of their livelihood. The court merley held that challenged order was a violation of certain related court decrees pertaining to the water and was also an arbitrary failure on the part of the Secretary of the Interior to recognize his fiduciary duty to the tribe.

All of these cases have invoked or at least referred to the trust responsibility doctrine in a contest of particular, recognizable Indian rights, which were being interfered with or not sufficiently protected, e.g., actual land occupancy (Cramer); existing allotment funds (Mason); perfected Spanish and Mexican land (Lane); adjudicated water rights (Pyramid); statutory requirement for issuance of trader regulations (Rockbridge).

In the pending case we find no comparable context of particular, recognizable rights of plaintiffs upon which to invoke the doctrine of trust responsibility.

This court, having considered matters presented outside the pleadings and having given both parties reasonable opportunity to present all material pertinent to a motion under Rule 56, Fed.R.

Civ.P., shall, pursuant to Rule 12(c) Fed.R.Civ.P., treat defendant's motion to dismiss as one for summary judgment to be disposed of as provided in Rule 56, Fed.R.Civ.P.

Accordingly, it is the order of this court that defendant's motion for summary judgment be and the same is hereby granted.