# UNITED STATES *v.* MASON, ADMINIS-TRATOR, ET AL.

No. 72–654.   Argued April 18, 1973—Decided June 4, 1973*

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. DOUGLAS, J., concurred in the result.

*Solicitor General Griswold* argued the cause for the United States in No. 72–654. With him on the brief were *Assistant Attorney General Frizzell, Deputy Solicitor General Lacovara, Harry R. Sachse, Edmund B. Clark,* and *Carl Strass. Paul C. Duncan,* Assistant Attorney General of Oklahoma, argued the cause for petitioner in No. 72–606. With him on the brief was *Larry Derryberry,* Attorney General.

*Charles A. Hobbs* argued the cause for respondents in both cases. With him on the brief was *Pierre J. LaForce.*†

MR. JUSTICE MARSHALL delivered the opinion of the Court.

The issue in these cases is whether a trustee in the course of administering its fiduciary obligations is en-

---

*Together with No. 72–606, *Oklahoma* v. *Mason, Administrator, et al.,* also on certiorari to the same court.

†*David H. Getches* filed a brief for Native American Rights Fund as *amicus curiae* urging affirmance in No. 72–654.

titled to rely on a directly relevant decision of this Court which has neither been overruled nor questioned. The Court of Claims ruled that the United States breached its fiduciary duty by failing to resist payment of Oklahoma's estate tax on certain trust property held by the United States acting as trustee for the benefit of the Osage Indians. The Court of Claims recognized that this Court, in *West* v. *Oklahoma Tax Comm'n,* 334 U. S. 717 (1948), had squarely upheld the validity of Oklahoma's inheritance tax as applied to restricted Osage Indians. But the lower court believed that *West* had been so undermined by later decisions of this and other courts that the United States had an obligation to challenge its continuing validity. Since the court also believed that such a challenge would have been successful, it upheld both the plaintiffs' claim against the United States for the amount of the tax and the United States' third-party claim against Oklahoma for indemnification. We reverse. We hold that the United States was entitled to rely on *West* in paying the tax and thus did not breach its fiduciary obligations. It follows that the plaintiffs below suffered no compensable damages and that the claim over by the United States drops out of the case.

I

The facts and legal background of this dispute may be briefly stated. Before 1906, the Osage Reservation was held in trust for the Osage Tribe by the United States.[1] In that year, the Osage Allotment Act, 34 Stat.

---

[1] The land in question originally belonged to the Cherokee Nation, but in 1866, the Cherokees entered a treaty with the United States authorizing the United States to settle friendly Indians in Cherokee territory. See 14 Stat. 799. Pursuant to this treaty, the Osage Indians settled the land in question, and in 1883, the Cherokees conveyed the area to the United States to be held in trust for the

539, was passed, which divided tribal land equally among members of the Tribe. However, an individual Indian was not permitted to alienate the land unless "the Secretary of the Interior, in his discretion, . . . [issued] . . . a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this Act."[2] 34 Stat. 542.[3] In addition, the Act created so-called "headrights" which are each tribal member's individual share of the income derived from the minerals located on the land. The minerals and this income were to be placed in trust for the individual tribal members, subject to periodic distribution from income, until 1984, when legal title to the minerals together with the accumulated income would vest in the individual Indians.[4] Various tribal funds were also placed in trust until that year. As amended, the Act provides that land and funds which are either restricted or held in trust "shall not be subject to lien, levy, attachment, or forced sale . . . prior to the issuance of a certificate of competency." 61 Stat. 747.

The decedent in this case, Rose Mason, was an Osage Indian who had not received a certificate of competency. Pursuant to the Osage Allotment Act, the United States held certain of her property in trust for her. Upon

---

Osage Indians. See *West* v. *Oklahoma Tax Comm'n*, 334 U. S. 717, 720 (1948).

[2] The Act followed the pattern of the General Allotment Act of 1887, 24 Stat. 388, 25 U. S. C. § 331, which empowered the President to allot reservation land to certain Indians, but from which the Osage Indians were omitted.

[3] The Act has been frequently amended. 78 Stat. 1008; 61 Stat. 747; 52 Stat. 1034; 45 Stat. 1478; 37 Stat. 86.

[4] Originally, the Act provided that the property in question would vest in the Indians in 25 years. See 34 Stat. 544. However, an amendment was passed in 1938 extending the trust period to 1984. See 52 Stat. 1035.

her death intestate, an Oklahoma estate tax return was filed which included in her gross estate these trust properties. The Federal Government then paid Oklahoma some $8,087.10 in estate taxes out of the trust properties. Although the decedent's administrators were discharged in 1968, in 1970 the estate was reopened for the purpose of permitting the administrators to challenge the United States' payment of the tax. A suit was filed in the Court of Claims alleging that the United States had breached its fiduciary duty in making the payment,[5] and that court upheld the claim together with the United States' third-party claim against Oklahoma. See 198 Ct. Cl. 599, 461 F. 2d 1364 (1972). We granted certiorari because of the seeming inconsistency between the decision below and our prior decision in *West* v. *Oklahoma Tax Comm'n, supra.*[6]   409 U. S. 1124.

## II

In *Oklahoma Tax Comm'n* v. *United States,* 319 U. S. 598 (1943), this Court ruled that it could not infer a tax immunity extending to estate taxes on Osage property from the fact that Congress had placed restrictions on the alienability of the property. The *West* Court extended that ruling to property, such as that involved in this case, held in trust for the Osage Indians. The Court held that by placing the property in trust, Con-

---

[5] The suit was brought under 28 U. S. C. § 1491, which gives the Court of Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

[6] Both the United States, as defendant below, and Oklahoma, as third-party defendant below, petitioned for certiorari. We granted both petitions, cf. 41 U. S. C. § 114 (b), and consolidated the cases.

gress did not intend to immunize it from local taxation. Moreover, the federal-instrumentality doctrine was found to be no bar to Oklahoma's estate tax. Although this doctrine had been used in earlier cases to invalidate state property taxes on trust property, see, *e. g., McCurdy* v. *United States,* 264 U. S. 484 (1924); *United States* v. *Rickert,* 188 U. S. 432 (1903), the Court distinguished estate taxes since "[a]n inheritance or estate tax is not levied on the property of which an estate is composed. Rather it is imposed upon the shifting of economic benefits and the privilege of transmitting or receiving such benefits." 334 U. S., at 727. Discerning no congressional intent to immunize Osage trust property from state taxation and no constitutional bar to the tax, the Court upheld Oklahoma's claim.

As the Court of Claims itself recognized, the *West* decision "applied to the very type of trust property now before us." 198 Ct. Cl., at 609, 461 F. 2d, at 1370. Nonetheless, the court thought that the rationale of *West* had been substantially undermined by *Squire* v. *Capoeman,* 351 U. S. 1 (1956), which held that the profits from the sale of timber on the land of a Quinaielt Indian held in trust for him pursuant to the General Allotment Act, 25 U. S. C. § 331, was immune from federal capital gains taxes.

It must be noted, however, that the *Squire* Court did not purport to question or overrule *West,* and, indeed, did not so much as mention that decision. The *Squire* case involved a different tax by a different level of government on the trust properties of a different tribe held pursuant to a different statute. As the *West* decision itself made clear, decisions relating to other types of taxes are not readily transferable to the area of estate and gift taxation where the tax is imposed on the transfer of property rather than on the property itself or the

income it generates.   Cf. *Plummer* v. *Coler,* 178 U. S.
115 (1900).   Moreover, the *Squire* decision rested heavily
on the provision in the General Allotment Act provid-
ing for the removal of "all restrictions as to sale, en-
cumbrance, or taxation" when Indian property is granted
in fee—a provision which has no analogue in the Osage
Allotment Act insofar as these trust properties are
concerned.[7]

Nor can we agree with the Court of Claims that the
foundations of *West* have been substantially weakened
by subsequent lower court decisions.   Apart from our
difficulty in comprehending how decisions by lower courts
can ever undermine the authority of a decision of this
Court, we think it clear that each of the cases relied upon
below is distinguishable from *West*.   Thus, while it is
true that the Ninth Circuit construed the Mission In-
dian Act, 26 Stat. 712, to invalidate California's estate
tax as applied to a California Mission Indian in *Kirk-
wood* v. *Arenas,* 243 F. 2d 863 (CA9 1957), the *Kirkwood*
court carefully distinguished *West* and recognized its con-
tinuing validity.   See *id.,* at 865.   Similarly, the
Court of Claims' reliance on its own decision in *Big
Eagle* v. *United States,* 156 Ct. Cl. 665, 300 F. 2d 765
(1962), is misplaced since that decision, like *Squire,* con-

---

[7] Respondents argue before this Court that our recent decision
in *McClanahan* v. *Arizona State Tax Comm'n,* 411 U. S. 164 (1973),
substantially extended the protection afforded Indian tribes against
state taxation and therefore undermined *West.*   *McClanahan,* how-
ever, concerned a state income tax on the income of a reservation
Indian which was earned within the reservation—a situation wholly
different from that presented here.   Moreover, *McClanahan* cited
*Oklahoma Tax Comm'n* v. *United States,* 319 U. S. 598 (1943),
the predecessor of *West,* with approval, and specifically distinguished
the case of the Osage Indians by holding that "the [Indian sover-
eignty] doctrine has not been rigidly applied in cases where Indians
have left the reservation and become assimilated into the general
community."   411 U. S., at 171.

cerned a federal income tax. See also *United States* v. *Hallam,* 304 F. 2d 620 (CA10 1962). And cases such as *Nash* v. *Wiseman,* 227 F. Supp. 552 (WD Okla. 1963), and *Asenap* v. *United States,* 283 F. Supp. 566 (WD Okla. 1968), are of questionable relevance, since they arose under the General Allotment Act rather than the Osage Allotment Act. Cf. Rev. Rul. 69–164, 1969–1 Cum. Bull. 220.[8]

Thus, as the Court of Claims itself conceded, "since the *West* case in 1948, there has been no holding exactly on the precise issue now before us—the liability of such Osage property to state death taxation." 198 Ct. Cl., at 613, 461 F. 2d, at 1372. Although it might be fair to say that over the years the fringes of the *West* doctrine have been worn away, its core holding remains unimpeached by any decisions of this or any other court.

We need not decide, however, whether in a case squarely presenting the issue, we would continue to adhere to *West.* For the issue in this case is not whether *West* should be overruled, but rather whether the United States breached its fiduciary duty in failing to anticipate that it would be overruled. Cf. *Helvering* v. *Griffiths,* 318 U. S. 371, 394 (1943).[9]

---

[8] The Court of Claims relied in part upon a Technical Advice Memorandum issued by the Internal Revenue Service to the Oklahoma District Director of Internal Revenue on August 15, 1969. The Memorandum announced that, henceforth, Osage trust property would be exempt from federal estate taxation. The court also pointed to *Beartrack* v. *United States,* Ct. Cl. No. 281–67, in which the United States settled a suit for refund of federal estate taxes paid on restricted trust properties. It is obvious, however, that Internal Revenue Service decisions as to the scope of its own taxing power have no effect on the taxing power of the States.

[9] As all parties apparently recognize, the scope of the United States' fiduciary duty in administering the trust property is a question of federal law. Cf. *Clearfield Trust Co.* v. *United States,* 318 U. S. 363 (1943).

When the question is so posed, we think that the answer is obvious. There is no doubt that the United States serves in a fiduciary capacity with respect to these Indians and that, as such, it is duty bound to exercise great care in administering its trust. See, *e. g., Seminole Nation* v. *United States*, 316 U. S. 286, 296–297 (1942). But it has long been recognized that a trustee is not an insurer of trust property. As Professor Scott has written, "A trustee is under a duty in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property." 2 A. Scott, Trusts 1408 (3d ed. 1967) (hereinafter cited as Scott). See, *e. g., Phelps* v. *Harris*, 101 U. S. 370, 383 (1880). It follows that "[i]f the trust property is lost or destroyed or diminished in value, the trustee is not subject to a surcharge unless he failed to exercise the required care and skill." 2 Scott 1419.

Applying these familiar principles to the facts before us, we are required to decide whether the United States can be said to have acted with less than the requisite care in refusing to contest the Oklahoma tax. When the State asserts a doubtful tax claim against trust property, the trustee is often presented with a close question. Normally, the trustee is obligated to pay taxes on the trust estate, and, indeed, if he negligently fails to do so, he may be held liable for any resulting penalty. See, *e. g.,* 2 Scott 1422. Yet, as these cases demonstrate, if he pays the tax, he may similarly be called upon to reimburse the trust estate for the amount of the tax.

In order to avoid placing a trustee on the horns of this dilemma, most courts which have considered the problem have given a trustee broad discretion to pay taxes claimed by the State so long as the trustee's judgment that the taxes are valid or that the costs and risks of litigation outweigh the advantages is not wholly unrea-

sonable. See, *e. g., Crutcher* v. *Joyce,* 146 F. 2d 518, 519 (CA10 1945); *In re Estate of Miller,* 259 Cal. App. 2d 536, 550, 551, 66 Cal. Rptr. 756, 766 (1968); *In re Estate of Wehrhane,* 41 N. J. Super. 158, 166, 124 A. 2d 334, 338 (1956); *Henshie* v. *McPherson & Citizens State Bank,* 177 Kan. 458, 479, 280 P. 2d 937, 953 (1955); *In re Vanderbilt's Will,* 190 Misc. 824, 850, 77 N. Y. S. 2d 403, 427 (1948); *Selleck* v. *Hawley,* 331 Mo. 1038, 1056–1057, 56 S. W. 2d 387, 395–396 (1932).

Thus, even if the *West* case had never been decided, the plaintiffs below would still have had difficulty in making out a case that the United States had breached its fiduciary duty by paying the tax. But, of course, *West* had been decided at the time the tax was paid, and we therefore deal here with an assertion of taxing authority which was not merely plausible but had been expressly approved by a decision of this Court. Generally, when a trustee is in doubt as to what course to pursue, the proper procedure for him to follow is to conform his conduct to the instructions given him by the courts. See, *e. g., Mosser* v. *Darrow,* 341 U. S. 267, 274 (1951). Here, the United States did just that, and plaintiffs below ask us to find that obedience to the instructions of this Court constitutes a breach of fiduciary duty.

It is, of course, true that Supreme Court decisions are on occasion overruled and that the opportunity to overrule them would never arise if litigants did not continue to challenge their validity. But, in this context at least, it is unnecessary to penalize the United States' proper reliance on our past decisions in order to re-examine them, since there is no bar to a suit by plaintiffs below directly against Oklahoma for recovery of the tax. Cf. *Poafpybitty* v. *Skelly Oil Co.,* 390 U. S. 365 (1968). And if the doctrine of *stare decisis* has any meaning at all, it requires that people in their everyday affairs be

able to rely on our decisions and not be needlessly penalized for such reliance. Cf. *Flood* v. *Kuhn,* 407 U. S. 258, 283 (1972); *Wallace* v. *M'Connell,* 13 Pet. 136, 150 (1839).

We do not have to say that a fiduciary may never be held liable for reliance on prior decisions of this Court. But, as the discussion above demonstrates, the United States' reliance on *West* was reasonable in this situation. The *West* decision has neither been overruled nor questioned in our subsequent cases. It is fully consistent with later developments and has been followed without protest for 24 years. Since we find that the United States acted with the requisite care and prudence in following *West,* the decision below must be reversed with instructions to enter judgment dismissing the complaint.

*So ordered.*

MR. JUSTICE DOUGLAS concurs in the result.