**ESTATE of Jacqueline Elkins SHELTON,
Appellant,**

v.

**OKLAHOMA TAX COMMISSION,
Appellee.**

**No. 47430.**

Supreme Court of Oklahoma.

Dec. 16, 1975.

Donald C. Little, Kansas City, Kan., Matthew Kane, Jr., Pawhuska, for appellant.

Lester D. Hoyt, Gen. Counsel, Okl. Tax Commission, Stanley J. Alexander, Clyde E. Fosdyke, Oklahoma City, for appellee.

DOOLIN, Justice.

This is an appeal from a decision of the Oklahoma Tax Commission (Commission) disallowing a refund to appellant estate of Jacqueline Elkins Shelton, for estate taxes paid under protest. The protested tax was levied upon 10.77837 Osage Indian headrights owned by decedent at her death.

We are called upon to decide whether Oklahoma has the power to levy an inheritance tax on Osage Indian headrights and if so whether the situs of these headrights is in Oklahoma even though the deceased was a resident of another state.

Jacqueline Elkins Shelton, an Osage Indian, died a resident of Kansas City, Kansas. Her estate was probated in Kansas and ancillary proceedings were filed in Colorado and Oklahoma.

The Oklahoma Tax Commission issued an order pursuant to the Oklahoma pro-

ceedings, increasing the amount of tax due from the estate, by including in the gross estate the "headrights" owned by her at her death. Appellant estate paid the additional taxes under protest and filed its claim for a refund with the Commission contending that headrights are not taxable in Oklahoma.

A hearing was held before the Commission on September 21, 1973. The Commission upheld the order, finding ..... the Osage headrights were not intangibles but rather represented an "interest in the mineral rights located under land in Osage County," and thus were properly taxable in Oklahoma. The estate appeals.

Osage Indian headrights stem from the Osage Allotment Act of June 28, 1906, 34 Stat. 539. This act provided for tribal land to be divided equally among members of the Osage tribe. The act further provided that only by receiving a certificate of competency from the Secretary of the Interior could an individual allottee alienate his land. In addition, the act created "headrights" which were the individual's share of the minerals located in and under tribal lands.

■ These minerals and the income derived from them were placed in trust with the United States for 25 years and also made inalienable until legal title to the oil, gas and other minerals would vest in the individual on the basis of his headrights, at the end of the trust period. This 25 year trust period has been extended several times[1] and at present time does not expire until 1984. The accrued royalties from the minerals were to be credited and paid quarterly to each allottee or his heirs, pro rata. This right to receive the trust funds and the mineral interests at the end of the trust period, and to the royalties arising from the mineral estates and interest on the trust fund during such period is defined as a "headright." See *West v. Oklahoma Tax Commission*, 334 U.S. 717,

68 S.Ct. 1223, 92 L.Ed. 1676 (1948), *United States v. Mason*, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973), and Cohen, Handbook of Federal Indian Law (1958) pp. 450–455.

Appellant contends that by virtue of *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), until a grant of minerals is issued to the individual at the end of the trust period, neither the federal government nor the state has the power to subject these rights to taxation. In *Squire* the question was whether the proceeds of the sale of timber on Indian allotted lands in the State of Washington could be subject to federal income taxes. The Court held that, in view of the provision of the 1887 General Allotment Act, 25 U.S.C.A. § 331 et seq. that the government must convey the land to the allottee at the end of the statutory restricted period free of all charges or encumbrances, taxation would be unreasonable and a breach of faith with the Indians, and the proceeds from the sale of timber were not taxable.

That case, however, was concerned with *federal income* taxes and not state inheritance taxes and was based on a different allotment act with different provisions.

The question of Oklahoma estate taxation of Indian headrights was squarely presented to the United States Supreme Court in *West v. Oklahoma Tax Commission* supra. The Court, while recognizing that permitting the imposition of inheritance taxes on trust properties such as Osage Indian headrights might result in depleting the trust corpus, held that this is the normal and intended consequences of this type of a transfer tax and until Congress affirmatively indicates that this burden requires immunity from such taxes, headrights are properly included within the taxable estate of a deceased Indian.

The Court in *West* felt that the decision in *Oklahoma Tax Commission v. United States*, 319 U.S. 598, 63 S.Ct. 1284, 87 L.

---

1. The Act of March 3, 1921, 41 Stat. 1249 extended the trust period to 1946; the Act of March 2, 1929, 45 Stat. 1478 to 1958;

and the last extension, the Act of June 24, 1938, 52 Stat. 1034, provided that the extension would continue until January 1, 1984.

Ed. 1612 (1943) was controlling. That case held that a restriction on alienation, without more, was not the equivalent of a congressional grant of estate tax immunity. Although the restriction in the latter case was on cash and securities held by the Department of Interior, the *West* Court did not see any difference for estate tax purposes between restricted personal property and the Osage headright property. The effect which an estate or inheritance tax might have is the same in both instances. The fact that the United States hold legal title to the trust property but not as to the restricted property afforded no distinguishing characteristic.

Appellant apparently believes that the *West* decision has been slowly eroded by subsequent decisions such as *Squire v. Capoeman* supra, *Big Eagle v. United States*, 300 F.2d 765, 156 Ct.Cl. 665, (1972) and *Mason v. United States*, 461 F.2d 1364, 198 Ct.Cl. 599, (1972). The *Mason* Court of Claims' decision however, was reversed by the United States Supreme Court in *Mason v. United States* supra, which held that the United States did not breach its fiduciary duty by adhering to *West* and paying Oklahoma inheritance taxes assessed against the estate of a restricted Osage Indian. The Court held that *Squire* did not overrule *West*, and further did not agree with the Court of Claims that the foundations of *West* had been weakened by lower court decisions. "Although, it might be fair to say that over the years the fringes of the *West* doctrine have been worn away, its core holding remains unimpeached by any decisions of this or any other court." *United States v. Mason, supra*, 93 S.Ct. at p. 2207.

Appellant's reliance on lack of taxation of Mrs. Shelton's estate by the federal government is also shown to be misplaced. The *Mason* Court states in footnote 8, 93 S.Ct. p. 2207 that "It is obvious, however, that Internal Revenue decisions as to the scope of its own taxing power have no effect on the taxing power of the States."

We thus hold that until Congress exempts Indian headrights from state taxation or *West* is affirmatively overruled, Oklahoma Osage Indian headrights shall be included in a decedent's gross estate for inheritance tax purposes.

Appellant also argues that even if the headrights were properly taxable in Oklahoma, Mrs. Shelton died a resident of Kansas whereas the decedent in *West* was an Oklahoma resident. It feels that if the headrights are taxable through *West*, they should be subject to taxation only in Kansas as intangible personal property, which because of reciprocity statutes of Kansas 79–1501(e) K.S.A. and Oklahoma 68 O.S. 1971 § 807(A)(1)(b) as amended by 68 O. S. § 807(A)(1)(b) (Supp.1975) is taxable at domicile of decedent. The Commission contends that headrights are not intangibles, but rather an interest in real estate and thus tangible property to be taxed at its situs.

Headrights are sometimes defined as the right of Osage Indians to participate in the distribution of *mineral royalties* placed in the Treasury of the United States to the credit of the Osage tribe together with the interest on a per capita basis in the mineral estate itself. *Taylor v. Tayrien*, 51 F.2d 884 (10th Cir. 1931). In effect the headrights are interests in unaccrued royalties arising from mineral interests.

*McCully v. McCully*, 184 Okl. 264, 86 P.2d 786, (1939) holds unequivocally that while accrued royalties are personal property, "unaccrued royalty is real and not personal property." The Commission feels that until such time as the holder of the headrights receives his quarterly distribution from the trust estate, the "headrights" or interest in the royalties are an interest in land and thus located where the land is, in Oklahoma. We agree. The reference in the editorial syllabus in *West supra* to "Osage mineral headrights and other personal property," is merely a "lapsus linguae" and is not to be held as controlling. Headrights are not personal

property because they have not been reduced to possession but are an interest in real property. Also see *Peppers Refining Company v. Barkett*, 208 Okl. 367, 256 P.2d 443 (1953), *In Re Shailer's Estate*, 266 P.2d 613 (Okl.1953).

Affirmed.

All the Justices concur.