John ERIC, Peter Matthew, Sr., Aaron Rivers, Sr., and Irvin Morris, Individually and on behalf of all others similarly situated

v.

The SECRETARY OF the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and the United States of America.

No. A76–276 Civil.

United States District Court,
D. Alaska.

Aug. 28, 1978.

Michael J. Frank, Gregory M. O'Leary, Alaska Legal Services Corp., Anchorage, Alaska, for plaintiffs.

Alexander O. Bryner, U. S. Atty. for Alaska, Anchorage, Alaska, for defendants.

### MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on the federal defendants' motion to dismiss, or in the alternative for summary judgment, and on the plaintiffs' motion for partial summary judgment.

### I. Facts

This action is brought by residents of Native villages, located in western and northern Alaska, seeking damages, declaratory, equitable and injunctive relief. These plaintiffs have sued the Secretary of Housing and Urban Development (HUD) and the United States for breach of their trust responsibilities in administering the Bartlett Act, 42 U.S.C. § 3371 (1970).[1] This statute

1. 42 U.S.C. § 3371 (1970) states:

Assistance for housing in Alaska.

(a) Loans and grants; State program; approval by Secretary; terms and conditions; standards for housing; mutual and self-help in construction; encouragement of self-government and home ownership.

The Secretary of Housing and Urban Development (hereinafter referred to as the "Secretary") is authorized to make loans and grants to the State of Alaska, or any duly authorized agency or instrumentality thereof, in accordance with a statewide program prepared by such State, agency, or instrumentality, and approved by the Secretary, to assist in the provision of housing and related facilities for Alaska natives and other Alaska residents who are otherwise unable to finance such housing and related facilities upon terms and conditions

which they can afford. The program shall (1) specify the minimum and maximum standards for such housing and related facilities (not to exceed an average of $10,875 per dwelling unit); (2) to the extent feasible, encourage the proposed users of such housing and related facilities to utilize mutual and self-help in the construction thereof; and (3) provide experience, and encourage continued participation, in self-government and individual home ownership.

(b) Amount of grants.

Grants under this section shall not exceed 75 per centum of the aggregate cost of the housing and related facilities to be constructed under an approved program.

(c) Authorization of appropriations.

There is authorized to be appropriated not to exceed $10,000,000 to carry out the purposes of this section.

provides a method for distributing funds to the State of Alaska to assist in providing housing, primarily for Alaskan Natives. The plaintiffs claim that the houses provided under this program were improperly designed and built and are therefore unsafe and unhealthy. This court previously dismissed defendant Alaska State Housing Authority (ASHA) because of a lack of subject matter jurisdiction. Memorandum and Order, No. A76–276 Civil, January 31, 1978.

Plaintiffs contend that the defendants have greater responsibilities under the Bartlett Act than the State because the Act was enacted to fulfill the federal government's special trust relationship with Native Americans. *See Seminole Nation v. United States,* 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942); Chambers, *Judicial Enforcement of the Federal Trust Responsibility to Indians,* 27 Stan.L.Rev. 1213 (1975). The plaintiffs argue that the trust relationship gives the Bartlett Act more potency with reference to the federal defendants, that the defendants have breached the "exacting fiduciary standards" required of a trustee, *Seminole Nation,* 316 U.S. at 297, 62 S.Ct. 1049, and that this federal common law doctrine added to the statute creates federal question jurisdiction and a valid cause of action.

Defendants have moved that the action be dismissed on several grounds, including absence of federal question jurisdiction and the presence of sovereign immunity, and have denied that the Bartlett Act was enacted to fulfill a special trust relationship and have contended that the statute alone does not create a cause of action upon which relief can be granted.

The court first will examine the issue of federal question jurisdiction and then the issue of sovereign immunity.

## II.  Jurisdiction

The defendants dispute that this is a case which arises under the laws of the United States as required by 28 U.S.C.A. § 1331(a) (1977). They focus upon the statute and argue that this court's order dismissing

ASHA applies with equal force to the federal defendants. The court's federal question jurisdiction must appear on the face of the well-pleaded complaint. *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 676, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). The plaintiff's Second Amended Complaint alleges that "the defendants by their acts and omissions have breached the trust duties they owe to plaintiffs under the Bartlett Act." (Paragraph 25, Second Amended Complaint).

The doctrine that the federal government stands in a fiduciary relationship to Native Americans has been a part of our common law since the early days of the Republic. *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831). Over the years courts at all levels have sustained the doctrine that in its relations with Native peoples the government owes a special duty analogous to those of a trustee. *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912); *Seminole Nation v. United States,* 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942); *Redfox v. Redfox,* 564 F.2d 361, 365 (9th Cir. 1977); *Manchester Band of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238 (N.D.Cal.1973). One recent decision refers to the " 'unique relationship' between Indians and the federal government, a relationship that is reflected in hundreds of cases and is further made obvious by the fact that one bulging volume of the U. S. Code pertains only to Indians." *White v. Califano,* 437 F.Supp. 543, 555 (D.S.D.1977).

This common law doctrine applies to Alaska Natives. *Koniag, Inc. v. Kleppe,* 405 F.Supp. 1360, 1373 (D.D.C.1975). In *Alaska Public Easement Defense Fund v. Andrus,* 435 F.Supp. 664 (D.Alaska 1977) this court said that "although generally the Alaska Natives were not dependent in the sense that they were on reservations, their fate rested in the hands of Congress and they were dependent upon its protection and good faith." *Id.* at 671. The fact that a treaty between the United States and

Alaska Natives never existed does not affect the existence of the trust relationship. In *Joint Tribal Council of Passamaquoddy Tribe v. Morton,* 528 F.2d 370 (1st Cir. 1975) where the principal issue in the case was the nonexistence of a treaty but the court still held that the trust responsibility required the federal government to assist the Natives in pursuing their claims against the State.

■ The court will later discuss the relationship between the Bartlett Act and this common law doctrine. It is enough for the present analysis to hold that the Bartlett Act does fulfill the trust relationship and the plaintiffs complaint is based on the statute and the doctrine. The dismissal of ASHA was necessary because the trust doctrine applies only to the federal government and not to the State or its agencies.

■ The Supreme Court has said "we see no reason not to give 'laws' its natural meaning . . . and therefore conclude that § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). Therefore, the court holds that federal question jurisdiction exists for the plaintiffs claims based upon the defendants acts and omissions which breach the trust duty under the Bartlett Act. Consistent with the court's order of January 31, 1978, those claims based solely on the Bartlett Act must be dismissed (Paragraph 26, Second Amended Complaint).

The defendants also move that the plaintiffs' cause be dismissed as barred by the doctrine of sovereign immunity. *See generally,* 14 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction,* §§ 3654–56 (1976). In deciding the issue of sovereign immunity the court must distinguish between those claims which are monetary, and those claims requesting declaratory and equitable relief.

The United States may not be sued without its consent. *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct.

1457, 93 L.Ed. 1628 (1949). *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). *Hill v. United States,* 571 F.2d 1098 (9th Cir. 1978). The absence of consent is a jurisdictional defect. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Although plaintiffs have sued the Secretary of HUD along with the government, there is little doubt that in its totality this is a suit against the United States. The determinative factor is not how the case is captioned but rather the result of the judgment or decree which might be entered. *Minnesota v. Hitchcock,* 185 U.S. 373, 387, 22 S.Ct. 650, 46 L.Ed. 954 (1902). The general rule is that

> "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' "

*Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). All of the plaintiffs' claims would in some way interfere with public administration and are not aimed at the Secretary as an individual. In order to succeed on their claims the plaintiffs must demonstrate that their cause fits within an exception to the doctrine or that sovereign immunity has been waived.

The plaintiffs claim that a breach of a trust duty is an ultra vires act. *See Washington v. Udall,* 417 F.2d 1310 (9th Cir. 1969). This exception applies when an officer has acted beyond his delegated authority and therefore his acts are not the acts of the sovereign. Plaintiffs attempt to fit a failure to act resulting in a breach of a common law trust duty into this exception by referring to *Rockbridge v. Lincoln,* 449 F.2d 567 (9th Cir. 1971) which states that the ultra vires exception could be applied to omissions as well as affirmative acts beyond the authority of a statute. However, the *Rockbridge* case was based on a statute which created a plain duty for the government to act whereas the present case is based on breach of a common law duty and not the language of the Bartlett Act. *See Tewa Tesuque v. Morton,* 498 F.2d 240, 243

(10th Cir. 1974). Plaintiffs confuse the creation of a cause of action with a waiver of sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 400–401, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

28 U.S.C.A. § 1331 (1977) which provides for federal question jurisdiction is not a waiver of sovereign immunity. *See Smith v. Grimm*, 534 F.2d 1346, 1351 n. 6 (9th Cir. 1976). The Declaratory Judgment Act, 28 U.S.C. § 2201–02 (1970), does not waive sovereign immunity. *White v. Administrator of General Service Administration*, 343 F.2d 444, 447 (9th Cir. 1965). Nothing in the Bartlett Act can be construed as a waiver. The Congress, however, has recently waived sovereign immunity as to "relief other than money damages." 5 U.S.C.A. § 702 (1977).

The plaintiffs have chosen to frame their prayer for relief in terms of specific relief. Phrasing a claim in terms of specific relief is not enough to escape sovereign immunity if such a claim is essentially one for a money judgment. *See Carter v. Seamans*, 411 F.2d 767 (5th Cir. 1969). *Mathis v. Laird*, 483 F.2d 943 (9th Cir. 1973), *Aquilar v. Kleppe*, 424 F.Supp. 433, 436–37 (D.Alaska 1976). The claims "requiring the defendants to rehabilitate the houses" (Paragraph 30(a), Second Amended Complaint) and those "requiring the defendants to reimburse plaintiffs and class members for their expended costs of repair and excessive costs of maintenance" (Paragraph 30(b), Second Amended Complaint) are essentially claims for money judgments.

■ However, the claims for a Declaratory Judgment determining that the defendants have violated their trust duty or acted in an arbitrary and capricious manner are not barred by sovereign immunity (Paragraph 29, Second Amended Complaint) because they are not essentially money judgments and 5 U.S.C.A. § 702 (1977) has waived sovereign immunity as to them. The same reasoning would apply to the request for equitable relief "forbidding the defendants from pressuring ASHA to collect rentals from the plaintiffs" or inducing the class members to sign Conditional Sales Contracts with ASHA until the houses are rehabilitated (Paragraph 30(c), Second Amended Complaint).

■ The request for an order for the defendants to pursue plaintiffs' claims against ASHA and enforce the contract between defendants and ASHA is likewise specific relief and sovereign immunity has been waived. *See Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370 (1st Cir. 1975).

### III. The Bartlett Act and the Trust Duty

■ The plaintiffs' motion for partial summary judgment moves the court to hold that the Bartlett Act was enacted to fulfill the defendants' trust duty. They would leave to further proceedings the determination of whether the defendants have actually breached their trust duties. The court has already described the many cases supporting the trust doctrine. (See Part II). In construing the legislative history of the Bartlett Act ambiguities should be resolved in favor of the Natives. *See Squire v. Capoeman*, 351 U.S. 1, 6–7, 76 S.Ct. 611, 100 L.Ed. 883 (1956). The legislative history does not appear to be ambiguous.

Congressman Howard W. Pollock testified before a March, 1968, Appropriations Subcommittee of Independent Offices of the House of Representative that, "The justification for such a program is two-fold— first, the special federal responsibility in matters dealing with aboriginal peoples of America, and second, the extreme conditions of abject poverty in a hostile weather environment." (Defendant's Attachment 4, p. 38). He also stated that the Bartlett Act "is a means of carrying the government's responsibility to poverty-stricken Alaska Natives, a duty that has existed almost since Alaska's purchase a century ago. . . . This program is a device to fulfill this long-neglected duty." (Defendant's Attachment 4, p. 39).

Senator Bartlett, for whom the Act was named, urged that the appropriations under the Act be approved because "We, as a nation, have a special obligation to our

American Indian and Alaska Native people." (Defendant's Attachment 3, p. 37)

The defendants have attempted to rebut the claim that the Bartlett Act was a statute enacted to fulfill the government's trust responsibility by calling it a "general" housing program. While the statute does refer to "Alaska natives and other Alaska residents who are otherwise unable to finance such housing" the Senate Report makes it clear that the program is a "separate housing assistance program" directed at "the Eskimos, Indians, and Aleuts [who] are in urgent need of such assistance. There are 200 Native Villages and communities, containing perhaps 40,000 persons in which there is an appalling lack of housing meeting even the most minimum standards, and a general absence of even the most rudimentary community facilities." Senate Report No. 1455, Committee on Banking and Currency, August 9, 1966, to accompany S. 3711, pp. 16–20 (Defendant's Attachment, 2, p. 30). *See also* House Rep.No. 1931, *as reprinted in* 3 U.S.Code, Congressional and Administrative News, pp. 3999, 4061 (89th Cong., 2nd Sess. 1966); 112 Cong.Rec. A5681 (Extension of Remarks, Senator Gruening, Oct. 22, 1966). The legislative history demonstrates that this was a program for Natives. The defendants argue that an impermissible distinction would then be made between housing provided Natives and any housing provided non-Natives under the program. First, the defendants have not shown that this is anything but a program for Natives and, second, it is the very nature of the trust doctrine that it apply to Native Americans and not to others. Such a distinction is neither unusual, *see* Title 25, U.S.C. (1976), nor impermissible. *See United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701 (1977).

Defendants have argued that the Bartlett Act has nothing to do with the trust doctrine because it provided for delegating administration of the program to the State. In *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912) and *Menominee Tribe v. United States,* 101 Ct.Cl. 22, 39–40 (1944) the government delegated some of its duties to agencies of the tribe or the tribe itself but the courts held that the government still retained its trust duty. As the plaintiffs have pointed out, excessive delegation may even be evidence of a breach of a trust obligation. If the government cannot shed its trust obligation by delegating its responsibility to the tribe, it is unlikely it could do so by a delegation to a state.

The trust doctrine is not limited to situations in which the government is managing property owned by an Indian tribe as defendants contend. The Supreme Court in *Morton v. Ruiz,* 415 U.S. 199, 236, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) applied the trust doctrine so as to require stricter administrative standards in the management of an "off-reservation gratuity." This case similarly involves an "off-reservation gratuity" and the trust doctrine applies to the management of the program.

The defendants have also contended that whatever trust duties exist are limited by the terms of the statute. While a trust obligation must be based on treaty or statute, *Joint Tribal Council of Passamaquoddy Tribe v. Morton,* 528 F.2d 370 (1st Cir. 1975), that obligation is not limited by the statute. *Manchester Band of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238 (N.D.Cal.1973). The trust obligation is instead limited by common law trust principles. *United States v. Mason,* 412 U.S. 391, 398, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973); *Seminole Nation v. United States,* 316 U.S. 286, 296–97, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942).

This finding that a trust duty is created between the government and these individual Natives does not conflict with this court's recent opinion in *Cape Fox v. United States,* 456 F.Supp. 784 (D. Alaska 1978). It was held in that decision that the government had no trust duties toward a Native village corporation organized under the Native Claims Settlement Act to manage property prior to its conveyance to the village corporation. The Bartlett Act was passed many years before the Native Claims Set-

tlement Act and nothing in it purports to eliminate trust obligations created by other statutes. Also, trust obligations owed individual Natives and those owed Native corporations can differ.

The other grounds on which defendants would base their alternative motion for summary judgment have no merit. A determination of whether the government has violated its trust responsibility will have to await further proceedings.

Accordingly IT IS ORDERED:

1. THAT defendants' motion to dismiss is granted as to the monetary claims and denied as to the requested declaratory and equitable relief.

2. THAT defendants' alternative motion for summary judgment is denied.

3. THAT plaintiffs' motion for partial summary judgment is granted.

4. THAT plaintiffs' motion for a stay is denied.