July 16, 1979

**79-52** **MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, LAND AND NATURAL RESOURCES DIVISION**

**Indian Lands—Eminent Domain—Mineral Rights Held by the United States as Trustees**

This responds to your request for our opinion on the above matter.

In *United States* v. *Winnebago Tribe of Nebraska,* 542 F. (2d) 1002 (8th Cir. 1976) (hereafter *Winnebago*), it was held that the United States may not take through eminent domain lands that it holds in trust for Indians under a treaty unless Congress clearly intended that Indian lands be taken. The present case raises the question whether *Winnebago* applies to mineral rights held by the United States in trust for the Osage Tribe under a statute rather than a treaty. The Army Corps of Engineers contends that *Winnebago* does not apply to the lands in question; the Department of the Interior and your Indian Resources and Land Acquisition Sections contend that it does. We have reviewed the arguments of the interested agencies and have independently examined the authorities. We concur in the conclusion of the Indian Resources and Land Acquisition Sections that the mineral rights in question cannot be taken without a clear statutory intent to permit such action.[1]

In *FPC* v. *Tuscarora Indian Nation*, 362 U.S. 99 (1960), the Supreme Court held that a general eminent domain statute authorized the taking of lands purchased by the Indians in fee simple. The *Winnebago* decision stated that *Tuscarora* applied only to lands which "were not held in trust by the United States and were not reserved by treaty." 542 F. (2d) at 1005. The Corps contends that this case is distinguishable from *Winnebago* on both points: the land is held absolutely by the Tribe instead of by the United States, and the land is "reserved," if at all, by statute rather than by treaty. Your Division and the Department of the Interior contend that

---

[1] We express no opinion whether the requisite congressional intent exists in this case.

the land is held in trust for the Tribe and that the rationale of *Winnebago* applies to land so held under a statute.

The background information you have provided may be summarized as follows. In 1866, the United States and the Cherokee Nation agreed by treaty that the United States could purchase Cherokee land in Oklahoma to settle other friendly Indians. 14 Stat. 799. The treaty of 1866 between the United States and the Osage Tribe, 14 Stat. 687, provided that the Osage could be removed from their Kansas reservation to Oklahoma with their consent and that half the proceeds from the sale of the Kansas reservation would be used to purchase a new reservation in Oklahoma. In 1870, a statute authorized the President to remove the Osage Tribe from Kansas when the tribe agreed. Act of July 18, 1870, c. 296, § 12, 16 Stat. 362. The Osage Reservation, now Osage County, Oklahoma, was created by the Act of June 5, 1872, 17 Stat. 228, to implement the 1870 statute. In 1883, the United States bought the land in the reservation from the Cherokees in fee simple "in trust for the use and benefit" of the Osage Tribe. In 1906, the Osage Allotment Act, 34 Stat. 539, was enacted. Section 2 of the Act allotted the Tribe's lands to its individual members. However, sections 3 through 5 of the Act reserved the mineral rights in the land to the Tribe for 25 years, with the royalties to be paid to the United States in trust for the Tribe and distributed to the individuals. This reservation of mineral rights has been extended several times and was made perpetual in 1978. *See* Pub. L. No. 95-496, § 2, 92 Stat. 1660.

The Corps' first argument is that the Osage Allotment Act conveyed the mineral rights to the tribe absolutely, placing only the proceeds in trust for the individual Indians. Your Division, to the contrary, argues that the original conveyance of the Reservation was to the United States in trust for the benefit of the Tribe and that § 3 of the Allotment Act retained in that status the mineral interest that was not conveyed to the individuals. As you point out, the Supreme Court has twice stated that the Osage mineral rights are held by the United States in trust for the Tribe. *See, United States* v. *Mason,* 412 U.S. 391 (1973); *West* v. *Oklahoma Tax Commission.* 334 U.S. 717 (1948).[2] Moreover, in *United States* v. *City of Pawhuska,* 502 F. (2d) 821 (10th Cir. 1974), the United States litigated on behalf of the Tribe as trustee of the mineral rights; the court stated that the rights were held in trust by the United States. Finally § 3 of the Osage Allotment Act requires the approval of the United States for any lease of mineral rights by the Tribe. These are persuasive indications that the mineral rights are held by the United States for the Tribe's benefit. On this question of real property law, we defer to your view that the United

---

[2] As the Corps notes, these cases involved the unquestionable trust status of the individual income interests in the minerals under Section 4 of the Osage Allotment Act, and the Court's characterization of the Government's relation to the Tribe is dictum.

States holds the mineral rights in trust for the benefit of the Tribe.[3]

The Corps' second argument is that the *Winnebago* rule only applies to lands reserved by treaty and thus does not protect the mineral rights in this case. We agree with your view that this argument is without merit. The *Winnebago* decision merely applies the general rule that, although Congress has the power to abrogate rights secured to Indians by treaty, its intent to renege on its previous commitments must be clearly shown. 542 F. (2d) at 1005. *See generally, Bryan* v. *Itasca County,* 426 U.S. 373 (1976); *McClanahan* v. *Arizona State Tax Commission,* 411 U.S. 164 (1973); *Menominee Tribe* v. *United States,* 391 U.S. 404 (1968). It is our opinion that this principle applies equally where an agreement with a tribe is ratified by statute. *Antoine* v. *Washington,* 420 U.S. 194 (1975). *Antoine* points out that the further negotiation of Indian treaties was forbidden by statute in 1871.[4] That statute had the purpose and effect of allowing the House of Representatives to participate in developing Federal Indian policy. *Id.,* at 202. However, the Court concluded, the statutory method of ratifying agreements has the same legal effect as a treaty and is governed by the same rules of construction. *Id.,* at 204. *See also, Choate* v. *Trapp,* 224 U.S. 665, 675 (1912). The historical accident that the agreement moving the Osage Tribe to the Oklahoma reservation was implemented by a statute in 1872 rather than by treaty at an earlier date does not affect its construction.[5] As you have concluded, the *Winnebago* rationale would therefore apply.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] We therefore find it unnecessary to address the Corps' assertion that *Tuscarora* applies to any land owned in fee simple by an Indian tribe.

[4] Act of March 3, 1871, 16 Stat. 566, 25 U.S.C. § 71.

[5] We also note that the Department of the Interior has raised an alternative argument that the Osage Reservation was treaty land and that the mineral rights come within the most literal reading of *Winnebago.* As Interior points out, the 1866 Treaty authorized the United States to remove the Osage Tribe to Oklahoma and obliged it to purchase the new reservation with half the proceeds of the sale of the old one. The subsequent acquisition of the Oklahoma reservation, though effected under a statute, was in pursuit of this treaty obligation and in replacement of treaty lands.