James COLEMAN, Jr., Helen Figures, B. Hammond, Marshall Kelly, Ipetha Lewis, Brenda Phillips, Earl Reagan, Fred Reagan, Mary Reagan, and Lonnie Whitaker, Plaintiffs,

v.

The UNITED STATES of America BUREAU OF INDIAN AFFAIRS, Defendant.

No. 79 C 5324.

United States District Court, N. D. Illinois, E. D.

Sept. 9, 1982.

Emory A. Tate & Associates, Chicago, Ill., for plaintiffs.

Robert T. Grueneberg, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiffs James Coleman, Jr., Helen Figures, B. Hammond, Marshall Kelly, Ipetha Lewis, Brenda Phillips, Earl Reagan, Fred Reagan, Mary Reagan, and Lonnie Whitaker ("Plaintiffs"), heirs and descendants of Creek Indians, brought this action against the United States of America Bureau of Indian Affairs ("United States"), alleging that the United States, as trustee over lands which were allotted to the plaintiffs' ancestors, has breached its fiduciary duty by failing to sell the plaintiffs' land advan-

tageously or selling it at artificially low prices. Plaintiffs request an accounting and damages and interest allegedly accumulated since 1906.

This matter is presently before the Court on the United States' motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b). Plaintiffs allege jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346 and 1353 and that the amount in controversy is more than $10,000.00. For the reasons set forth below, the Court finds that jurisdiction is lacking and, therefore, the defendant's motion to dismiss is granted.[1]

### Factual Summary

Plaintiffs allege that they are heirs and descendants of members of the Creek Indian Nation. The Creek Indians are one of the "Five Civilized Tribes."[2] *See* Act of April 26, 1906. 34 Stat. 137, § 1. The Five Civilized Tribes entered into numerous agreements with the United States, thereby relinquishing control over large tracts of land situated in what is now the eastern half of the State of Oklahoma. Two of those agreements are at issue in this case. Act of March 1, 1901, 31 Stat. 861; Act of April 26, 1906, 34 Stat. 137. According to those agreements, each properly enrolled Creek would receive a portion of the ceded land or its corresponding dollar value.

It is undisputed that plaintiffs' ancestors received title to their respective allotments. Plaintiffs, however, allege that in 1906, and without due process of law or an accounting, the Territorial Government of Oklahoma took over certain of the allotted property, then valued at approximately $30.00 per acre. Consequently, plaintiffs allege that the Territory of Oklahoma became with the United States co-trustee[3] of the disputed

---

**1.** Because jurisdiction is lacking, it is improper for us to consider the United States' allegations that this action is untimely pursuant to 28 U.S.C. § 2401 and that the plaintiffs lack standing and the plaintiffs' motion for class certification.

**2.** The other four tribes are the Choctaw, Chickasaw, Cherokee and Seminole.

**3.** The doctrine that the federal government stands in the fiduciary relationship of trustee to Native Americans has been part of common law since early in the 19th century. *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831) and has been consistently reaffirmed. *Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912); *Seminole Nation*

land for the benefit of the allottees.[4] Plaintiffs further allege that between 1907 and 1920, the United States either sold the disputed land at below market price or failed to sell to the disadvantage of the plaintiffs and that the United States permitted dissipation of the plaintiffs' property by improperly enlarging the membership rolls of the Creek Nation. The plaintiffs state, by supplementing their Amended Complaint, that they only discovered the details of these alleged improprieties in 1978 and 1979 while engaging in library research. They also allege that their several written requests for accountings of trust assets, commencing in the late 1930's and continuing through 1979, have been denied by the United States.

### Lack of Jurisdiction

■ In support of its motion to dismiss, the United States argues that the plaintiffs' claims must be pursued in the Court of Claims and not in a district court. This is because the plaintiffs are members of one of the Five Civilized Tribes, which tribes arguably are denied access to the district courts by the terms of several acts of Congress.

### 28 U.S.C. § 1353

Section 1353 provides

The district courts shall have original jurisdiction of any civil action involving the request of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

\*　　\*　　\*　　\*　　\*　　\*

but the provision shall not apply to any lands held or on before December 21, 1911, by either of the Five Civilized Tribes. . . .

v. United States, 316 U.S. 286, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942); United States v. Mason, 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973); Manchester Band of Pomo Indians, Inc. v. United States, 363 F.Supp. 1238 (N.D. Cal. 1973).

4. The State of Oklahoma is not named as a party to this action.

Section 1353 is a recodification of 25 U.S.C. § 345, the latter title dealing exclusively with Indian affairs. Thus § 345 also prohibits to the Civilized Tribes access to the district courts for claims relating to land allotted on or before December 21, 1911.

The parties have not cited any cases in which the proviso in §§ 1353 or 345 regarding the Five Civilized Tribes has been construed and we could find none.[5] However, the statute seems clear: where, as here, claims relate to lands allotted before 1911, a member of one of the Five Civilized Tribes may not sue on that claim in a district court. This apparent plain reading of § 1353 is yet more compelling when considered in conjunction with possible district court jurisdiction pursuant to 28 U.S.C. § 1331.

### 28 U.S.C. § 1331

■ 28 U.S.C. § 1331 grants the district courts original jurisdiction "of all civil actions arising under the Constitution, laws or treaties of the United States." Thus § 1331 does not provide an independent jurisdictional basis but predicates jurisdiction on another source: a federal law, treaty or the Constitution, from which the claim arises. Gully v. First National Bank of Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Phillips Petroleum v. Texaco, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed. 577 (1974). Plaintiffs' substantive claims clearly arise under two United States statutes: Act of March 1, 1901, 31 Stat. 861, providing for allotments to Creek Indians and Act of April 26, 1906, 34 Stat. 137, establishing, in pertinent part, methods for enrollment of members of the

5. There are reported cases in which members of the Five Civilized Tribes have been denied jurisdiction pursuant to § 1353 or § 345 but inexplicably those decisions neither refer to the proviso as one ground for the failure of jurisdiction nor engage the district court/Court of Claims dichotomy. See, e.g., Choctaw & Chickasaw Nations v. City of Atoka, Oklahoma, 207 F.2d 763 (10th Cir. 1953); Harkins v. United States, 375 F.2d 239 (10th Cir. 1967).

Five Civilized Tribes onto official rolls and uses to which the allotments may be put.

The Act of 1901, however, contains a specific remedy provision for disputes arising thereunder which is contradictory to § 1331's jurisdictional grant. Section 26 of the Act of 1901, entitled "Claims", provides

> All claims of whatsoever nature, ... which the tribe or any individual thereof may have against the United States, or any other claim arising under the treaty of eighteen hundred and sixty-six; or any claim which the United States may have against said tribe shall be submitted to the Senate of the United States for determinations; and within two years from the ratification of this agreement the Senate shall make final determination thereof;
>
>    *    *    *    *    *    *
>
> Any other claim which the Creek Nation may have against the United States may be prosecuted in the Court of Claims of the United States, with rights of appeal to the Supreme Court; and jurisdiction to try and determine such claim is hereby conferred upon said courts.

One construction of the remedy provision is that the direction to bring to the Court of Claims "any other claim which the Creek Nation may have against the United States" is merely precatory, *i.e.,* "may be prosecuted in the Court of Claims." Although the statute is silent, the implication is that such other claims might alternatively proceed in the district courts.

In light of 28 U.S.C. § 1353, and its counterpart 28 U.S.C. § 345, we reject this construction. Sections 1353 and 345 provide, as noted above, that the Five Civilized Tribes "shall" not bring actions in the district courts regarding allotments of land held by those tribes before 1911. The language of § 1353 and § 345 is not precatory but expressly prohibitive. Nonetheless, neither statute indicates which forum other than a district court is appropriate. It is only by reading §§ 1353 and 345 with the Act of 1901 that Congress' intention becomes clear: claims relating to allotments of land to the Five Civilized Tribes should proceed in the Court of Claims. *See, e.g., Erlenbaugh v. United States,* 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1973); *First Nat'l Bank of Milaca v. Smith,* 445 F.Supp. 1117 (D.C. Minn. 1977) (statutes relating to same general subject matter are to be construed together in order to effectuate both). This conclusion is supported by the fact that § 345 was enacted with the jurisdictional proviso in 1894 and amended without change to the proviso in 1901, by the same Congress that passed the Act of 1901 just one month later.[6]

We are aware that some Creek Indians have successfully brought actions in the district courts by invoking § 1331 jurisdiction in conjunction with the Acts of 1901 and 1906. The case of *Harjo v. Kleppe,* 420 F.Supp. 1110 (D.D.C. 1976), *aff'd sub nom. Harjo v. Andrus,* 581 F.2d 949 (D.C.C. 1978), is illustrative. In *Harjo,* the plaintiffs, Creek Indians, sought declaratory and injunctive relief from, *inter alia,* the policy and practice of the Interior Department in recognizing and dealing with the defendant as the Principal Chief of the Creek Nation. The *Harjo* plaintiffs contended that the defendants' actions violated various Congressional statutes, including those in issue in the instant case. The *Harjo* defendants alleged that jurisdiction was improper because the question under consideration was political, *i.e.,* the United States' alleged interference into tribal government.

---

**6.** Other subsequent acts of Congress, not relied upon in the instant action, are similar in intent. *See, e.g.,* Act of May 24, 1924, 43 Stat. 139, relating to claims then existing and providing, in pertinent part,

> That jurisdiction be, and is hereby, conferred upon the Court of Claims, notwithstanding the lapse of time or statutes of limitations, to hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Creek Indian Nation or Tribe, or arising under or growing out of any Act of Congress in relation to Indian affairs, which said Creek Nation or Tribe may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States....

According to the district court in *Harjo,* the defendants confused justiciability, *i.e.,* the appropriateness of a subject for judicial consideration, *with* jurisdiction, *i.e.,* the power of the court to hear a matter. In its view, jurisdiction was proper pursuant to 28 U.S.C. § 1331 as the "question clearly arose under the laws of the United States." 420 F.Supp. at 1116.

Despite that decision, we are not persuaded that *Harjo* is instructive in the instant case. Apparently, the court was not asked to consider in which forum—the district court or the Court of Claims—a member of the Creek Nation could bring a claim arising under the Act of 1906 (and Act of 1901). Surely we cannot assume that the matter was considered and decided in favor of district court jurisdiction but that no recitation of the deliberation was made in the opinion. *See also Groundhog v. Keeler,* 442 F.2d 674 (10th Cir. 1971).

We therefore conclude that 28 U.S.C. § 1331 cannot provide a basis for jurisdiction in this Court because the very law that would give life to the plaintiffs' claims in this Court, the Act of 1901, is fatal to it.[7]

*28 U.S.C. § 1346*

Jurisdiction cannot be asserted pursuant to 28 U.S.C. § 1346 for reasons identical to the failure of jurisdiction pursuant to § 1331. Section 1346(a)(2) provides that the

district courts shall have original jurisdiction, concurrent with the Court of Claims, of: "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress,

. . . .

Because this claim arises under the Act of 1901, its specific remedy provision forecloses jurisdiction under § 1346 as well as under § 1331. *See* discussion *supra.* Moreover, the plaintiffs, by alleging that the

amount in controversy is in excess of $10,-000, have removed their claim from the purview of § 1346.

As jurisdiction is improper under either §§ 1331, 1346 or 1353, the defendant's motion to dismiss this action is granted.

IT IS SO ORDERED.

---

**7.** Plaintiffs contend that the specific remedy provision for disputes arising under the Act of 1901 is not applicable to their case "in that the rights of the Plaintiffs [sic] ancestors did not become vested until the Supplemental Agreement of 1902 was ratified by Congress. Thus Section 26 of the Act of 1901 has no bearing on the herein captioned cause." We are unable to credit this assertion because we cannot locate any act of Congress in 1902 or subsequently which directly or indirectly invalidates the specific remedy provision of the Act of 1901.